STATE of Missouri, Respondent,

v.

Ben L. DAVIS, Appellant.

No. 39044.

Missouri Court of Appeals,
Eastern District.

May 9, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 15, 1979.

Application to Transfer Denied
July 17, 1979.

William J. Shaw, Public Defender, Dennis N. Smith, Asst. Public Defender, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Lawrence Mooney, Clayton, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of four counts of first degree robbery. Defendant was tried under the second offender act and sentenced to three concurrent ten year terms on the first three counts and a fifty year consecutive term on the fourth count.

No contention is raised that the evidence was insufficient to support the verdict so only a short factual statement is required. At approximately 11 a. m. on July 11, 1975 three men robbed a Tennessee Jed's restaurant on Lindberg in Frontenac. Two of the men carried sawed-off shotguns, the third may have had a pistol. Defendant was identified as one of the robbers. Following arrest on another charge, defendant made some inculpatory statements, both oral and written, and took policemen to a house in Wellston where a sawed-off shotgun was found in a location described by defendant. Further discussion of defendant's statements will be made subsequently.

Defendant's first contention is that he was denied due process because the sentence imposed on Count IV exceeded the sentence he would have received had he pled guilty. After hearings on certain pretrial motions plea bargaining negotiations were conducted between counsel for defendant and the State. Following these negotiations a discussion occurred between counsel and the court. The court indicated that if defendant entered a plea of guilty the court would sentence him in accordance with the recommendation of the State. The recommendation of the State would be fifteen years on each of five counts (the four here involved and one other still pending) to run concurrently. Defendant opted to go to trial.

During the trial, following several requests by defense counsel, the court advised counsel that based upon testimony he had heard and having been advised that defendant had several prior felony convictions, if defendant was convicted and sentencing was up to the court defendant would receive "a substantial amount of time . . more than recommended." The court also advised counsel that the time for such determination had not arrived, that the court could give no definite length of sentence at that time, and that the sentence "would be in accordance with the evidence and all of his background."

Following conviction the court assessed the sentences set out above. We attach as an appendix hereto the colloquy between defense counsel and the court following sentencing.

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) the United States Supreme Court held that it was a denial of due process to enhance or threaten to enhance a defendant's punishment to prevent him from exercising a constitutional right. But the doctrine of those cases has been expressly held not applicable to cases involving plea-bargaining. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). In the latter cases it is recognized that in the "give-and-take" of plea bargaining, concessions are made by the prosecutor and leniency is granted by the court in exchange for the plea.

"There is no doubt that those homicide defendants who are willing to plead non vult may be treated more leniently than those who go to trial, but withholding the

possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed." *Corbitt v. New Jersey, supra,* 439 U.S. 212, l.c. 223, 99 S.Ct. 492, l.c. 500, 58 L.Ed.2d 466, l.c. 477.

Missouri has also recognized the propriety of plea bargaining. *Schellert v. State,* 569 S.W.2d 735 (Mo. banc 1978). While judicial participation in the bargaining itself is not approved (*State v. Tyler,* 440 S.W.2d 470 (Mo. banc 1969) [4–7]) indication of the judge's willingness to accept a particular disposition is not improper (*Bonner v. State,* 535 S.W.2d 289 (Mo.App.1976) [8]) and in fact the court must advise the defendant of its intention to reject the bargained for recommendation, *Schellert v. State, supra,* [5]. It is therefore apparent that, without more, a judge's willingness to accept a bargained for disposition does not establish that his subsequent refusal to grant leniency after trial constitutes an unconstitutional denial of due process by punishing defendant for exercising his right to trial.

Nor does the record here support a contention that in this case the court enhanced punishment as a penalty for going to trial. The court pointed out its reasons for assessing the punishment it did and the consideration it made of the offenses committed as well as defendant's background. Defendant points to the first sentence of the court's last statement at the sentencing hearing—"I would rather that such is the situation"—as indicating that the court was utilizing higher sentences to coerce waiver of jury trials. We cannot attribute to the statement that meaning. It is ambiguous on its face and when read with the remainder of the court's comment clearly indicates that the court was stating that it makes its sentencing decisions on the basis of all the facts before it. We find no error in the sentencing.

Defendant's second point is that he was denied due process because the prosecuting attorney told the main state witness not to discuss the case with defense counsel.

We do not find it necessary to address the legal issue presented. Defense counsel called the witness, Mrs. Johnson, late one evening. Mrs. Johnson said he identified himself as from the prosecutor's office. She advised defense counsel that she had had two martinis and did not wish to discuss the case at that time. The next evening the prosecuting attorney called. In the course of the conversation he suggested that Mrs. Johnson not talk to defense counsel unless he, the prosecutor, or someone representing her interests was present. The defense attorney called shortly thereafter. Mrs. Johnson told him that she wanted to discuss the matter with her husband before agreeing to meet with defense counsel. She had told the prosecutor that she wanted to discuss the matter with her husband before talking with the prosecutor. She was apprehensive because defendant had escaped from jail while awaiting trial and she thought she might not proceed further because of that. Defense counsel had advised her of the escape during his first call. Mrs. Johnson advised defense counsel that she would call back the next day after consulting with her husband. By the time she arrived home the next day it was too late to call. Defense counsel never attempted thereafter to contact Mrs. Johnson. On this record we are unable to conclude that the prosecutor's statements to Mrs. Johnson blocked defense counsel's opportunity to interview. Mrs. Johnson, of course, had the right to refuse to meet with counsel and she consistently indicated that she wished to consult with her husband before making a decision. There is no indication this desired consultation was prompted by the prosecutor's statements, in fact, it appears to have originated because defense counsel advised Mrs. Johnson that defendant had escaped. Defense counsel thereafter failed to follow up his prior request, or to learn what Mrs. Johnson's decision was. We find no error in the court denying defendant's motions to dismiss, for continuance, and to strike based upon this alleged prosecutorial misconduct.

Defendant's remaining points arise from the testimony of two police officers. This testimony concerned certain inculpatory statements made by defendant to the officers. Defendant was originally arrested by the City of St. Louis police in connection with an unrelated crime. At the time of his arrest defendant received *Miranda* warnings and defendant refused to make any statement. Defendant was subsequently asked if he wanted an attorney present before a lineup was conducted. He stated he did and gave the name of an attorney. Police contacted the attorney who advised that he did not represent defendant and would not unless hired by defendant's parents. He further told the police that he would not be present at the lineup but to please advise him of the results. When advised of the conversation with the lawyer, defendant declined having a public defender represent him at the lineup. The lineup was never held because of the refusal of the victim to proceed further.

Approximately an hour later, defendant was interviewed by a St. Louis County policeman, Detective Newberry, in connection with different crimes. The record is unclear whether Newberry was advised that defendant had asked for counsel at the lineup. Defendant was given *Miranda* warnings. In his statements to Detective Newberry defendant denied participation in the robberies Newberry was investigating, but admitted participating in the Tennessee Jed robbery and volunteered to take Newberry to a house in Wellston where a sawed-off shotgun defendant claimed was used in that robbery was hidden. This was done the next day following additional *Miranda* warnings and police located the gun in the house pointed out and the place described by defendant. Defendant was then placed in the county jail.

At 7:00 p. m. on the day of his original arrest in the city, defendant was interviewed by Officer Franey of the Frontenac police. Franey had been advised by Newberry of defendant's admission of involvement in the Tennessee Jed robbery and went to the City Jail to serve defendant with a warrant. At that time defendant indicated he did not want to make a statement because "the walls have ears." The next day Franey obtained permission from a Magistrate judge to remove defendant from the County Jail to the Frontenac police station. Defendant was given his *Miranda* rights by Franey immediately upon entering the automobile for transportation to Frontenac. Defendant stated he understood his rights and wished to make a statement to clear up his involvement in the robbery so that he could get married. He was advised not to make any statement until they reached the Frontenac police station where *Miranda* rights were again given. While at the Frontenac station defendant executed a waiver of rights form, gave an oral statement, and wrote out a statement in longhand. In essence, he admitted his participation in the Tennessee Jed robbery although he denied being armed. While there were some discrepancies between defendant's statements and the testimony of the witnesses, these discrepancies were explainable and were not of substance. While at the Frontenac station, defendant was booked and processed. He was returned to the County Jail three hours after he left it.

Defendant denied that he was given his rights or that he gave an oral statement, contended that he was beaten, and stated that the written statement was dictated to him by Officer Franey. The police officers denied that any coercion or force was used to obtain the statements, and testified that defendant voluntarily made the oral and written statements attributed to him.

Defendant challenges the statements on only two grounds. The first is that he was denied effective assistance of counsel because he requested counsel and was interrogated without having had an opportunity to consult with counsel. Secondly, he contends the statements made at the Frontenac station were the product of an illegal arrest. The trial court resolved the conflict of testimony in favor of the testimony of the police officers and found the statements were voluntarily made. In so ruling, the court stated it disbelieved the testimony of defendant. It

further found that the only request for an attorney arose in connection with the lineup which was never held and that thereafter defendant voluntarily waived his right to counsel. Weight of the evidence and credibility of witnesses are questions to be resolved by the trial court. The factual findings of the trial court have evidentiary support and we defer to the findings of fact of the court. *See State v. Olds,* 569 S.W.2d 745 (Mo. banc 1978).

■ We are left, therefore, with the question whether as a matter of law defendant's initial request for a lawyer in connection with a lineup on a different charge vitiates any subsequent voluntary uncounseled statements or confessions.

We were confronted with the same contention that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), creates a *per se* rule in *State v. Blevins,* 581 S.W.2d 449, Mo.App., Eastern District, No. 39631, April 24, 1979. We rejected the *per se* rule in that case. We reject it here for the same reasons.

■ Defendant also contends that the removal from the St. Louis County Jail to the Frontenac police station was an unlawful arrest and the confession made at the police station should therefore be suppressed pursuant to *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In support of his contention that the arrest is illegal, defendant cites only Sec. 544.470 Mo.Supp.1972, which deals with bail. We do not consider that that statute makes the transfer for booking and processing an arrest. If it was an arrest, it was done with probable cause and under a warrant. The doctrine of *Brown,* supra, and *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) is inapplicable. *See State v. Fields,* 536 S.W.2d 56 (Mo.App. 1976) [2, 3].

Judgment affirmed.

WEIER, C. J., and SNYDER, P. J., concur.

### APPENDIX

"MR. SMITH (DEFENSE COUNSEL): I think it is important to put this on the record. I would make a motion sentence on Count IV be set aside and corrected. Earlier, we have spoken about this case. It was my understanding, prior to trial, the state would recommend a sentence of 15 years in this case.

Mr. Davis has stood trial and let the state prove their case. I feel, in other words, this man is being punished for going to trial. He didn't take the witness stand during the course of the trial and the court indicated to me, prior to trial and after the motion after it heard all the evidence in the case, they would follow the state recommendation. I can't see why, if a man goes to trial on a case, he should receive an additional 35 years, an additional 45 years sentence.

THE COURT: What did you say about my stating I would follow the recommendation of the prosecuting attorney?

MR. SMITH: Prior to trial and after the motion in this case, you stated you would follow the recommendation of the state.

THE COURT: Prior to trial, you asked me if I would follow the recommendation of the state on a plea of guilty. I said yes, I would. The defendant was tried. I have heard all the evidence in the case. It was a robbery with a shotgun. He has been found guilty of robbery with a sawed-off shotgun and I heard the testimony of terrorizing and intimidating the victims during the trial. I heard the testimony about the woman who became hysterical and even the calm victims who were worried the hysterical woman would cause them to be killed during the robbery.

As a result of all of this evidence that I have heard and the finding of guilty, I feel that a proper sentence in this case is a total of 60 years in the penitentiary. I do not think Mr. Davis should be on the street for a long, long, long time.

The fact I was willing to follow the state's recommendation on a plea prior to trial—and I am sure the state would take in the uncertainties of a conviction prior to trial and the uncertainties of proving the guilt beyond a reasonable doubt.

MR. SMITH: Your Honor, that is my point on this matter. If Mr. Davis is penalized, in this effect by going to trial on this situation, any person standing trial in any court before you, especially, would have a situation if he does not accept the state's offer, either come out with increased sentence, therefore killing that right to a jury trial.

THE COURT: I would rather that such is the situation. The court considers all the facts at all times. You can refer back to the front page of one of the daily newspapers when this court put a man on probation for a crime of forcible rape, a black on white rape, and after having been convicted by a jury. So, the record will not support what you state.

I have heard enough evidence in this case to find that 60 years is an extremely lenient recommendation and a lenient sentence. Because, Mr. Davis should spend a long, long time behind bars and he has proven by his conduct he cannot be allowed to be permitted to be outside in society.

That is the sentence of the court and this concludes the record."