**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Sterling JONES, Defendant–Appellant.**

No. 57778.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 19, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 26, 1991.

Application to Transfer Denied
May 3, 1991.

Scott E. Walter, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant Sterling Jones [hereinafter defendant] was charged with possession of a Schedule II controlled substance—cocaine in violation of § 195.020 RSMo (repealed 1989) and jury-tried. The jury found defendant guilty. He was sentenced to one year in the Missouri Department of Corrections according to § 195.200.1(1) RSMo (repealed 1989). The trial court denied defendant's motion for a new trial and this appeal follows.

On appeal from a criminal conviction, we review the evidence in the light most favorable to the state—meaning that we must accept as true all evidence whether direct or circumstantial, which tends to prove defendant guilty, together with all reasonable inferences supportive of the verdict. *State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989). We find the evidence sufficient to sustain the verdict. The defendant does not dispute on appeal the facts pertaining to the arrest but claims error in allowing rebuttal evidence.

Defendant's first point on appeal is that the trial court erred in allowing Officer Eddie Givens [hereinafter Givens] to testify during rebuttal that he knew the defendant's witness, Tony Jones [hereinafter Jones], from an investigation of drug activity. He also claims the court erred in allowing Givens to further testify as to the circumstances of a custodial interrogation since that testimony pertained to impermissible "collateral" matters and such testimony was highly prejudicial.

Jones testified he was present at the time when defendant was arrested. When asked on direct examination if he had seen Officer Givens, one of the arresting officers, before this incident, Jones replied that he had. Defense counsel then asked Jones where he had previously seen Givens, to which he responded: "he [Givens] used to go up at National's [a supermarket] on Jefferson and me and a friend of mine's [sic] used to go up there a lot, talk to him, you know, because my friend knew him from somewhere." Later on direct examination, Jones, who was present at the time of the arrest of the defendant, testified that Givens asked Jones: "Don't I know you," to which Jones responded, "yeah, you know me from, you know, National."

On cross-examination of Jones, the prosecution asked Jones if he had seen Givens anywhere else other than at the National, to which Jones answered: "Yes." No further questions were asked by the prosecutor to explain this relationship. In rebuttal, the prosecutor recalled Givens and at that time defendant did not object.

An appellate court "will not entertain a claim of error in improperly admitting evidence unless the question was properly raised in the trial court." *State v. Bibee*, 496 S.W.2d 305, 317 (Mo.App.1973). Defendant did not object at trial or in his motion for new trial that Givens was an improper rebuttal witness.

The following is the rebuttal testimony of Detective Givens:

Q [By Mr. Leritz, Prosecutor] Now, do you know a man named Tony Jones?

A [By Eddie Givens] Yes, I do.

.    .    .    .    .

Q [by Mr. Leritz] Okay. Now, how was it you came to know Tony Jones?

A [by Eddie Givens] Tony Jones was brought to the District Station by Officer Mancell who is now a Detective in the Third Bureau and his partner at the time—I don't remember his partner's name—for suspected drug activity in the projects.

Q Okay, and did you and Finney talk to Tony Jones?

A Yes, I did.

Q Why was that? What was he arresting Tony Jones for?

MR. WALTER: [Defense Counsel] Your Honor, at this time can I object? I think the purpose of Detective Givens here is to say that Mr. Jones has known Detective Givens before.

THE COURT: I am going to overrule the objection. Proceed.

Q (By Mr. Leritz) What was it about Tony Jones that led Mancell to bring him to you and Finney?

A During that time and since even before that time myself and Officer Finney was conducting an investigation in that area for suspected drug activity due to the numerous complaints that was received by the residents in that area due to the numerous shootings—well, the numerous drug-related shootings.

Q Okay, and that's what led to the arrest of Sterling Jones, also.

Q What sort of property did Tony Jones have on him?

MR. WALTER: Object, your Honor. What does Tony Jones' property have to do—

[Counsel approached the bench and the following proceedings were had outside the hearing of the jury.]

THE COURT: Give me an offer of proof.

MR. LERITZ: Judge, the officer will testify that he had a beeper and a large amount of cash on him when the traffic stop was made on him in the projects, and he got a ticket for unlawful backing, and then he was brought down to talk to these two officers because of those items that he had on him. I don't want the jury to think that, you know, he was just arrested for no reason at all.

MR. WALTER: But, your Honor, see, the whole issue here is I think he is offering Givens to rebut that he has seen Tony Jones before, and that is the issue, and I think Detective Givens has done that. We're not here to try Tony Jones. I didn't offer anything about Tony Jones' character or reputation or what it is.

THE COURT: I'm sorry. Go ahead and finish.

MR. WALTER: And I didn't think he had any reason to offer it. The question is knowledge, and he is trying to say the knowledge isn't good. It's bad knowledge, and he is going into more than just have you known him before and impeaching him, and I object as irrelevant.

THE COURT: Didn't you limit your direct though that he only knew him from the National Food Store? I think he's got a right to go and give the whole story based on what Givens knows about Jones.

MR. WALTER: Okay. I wasn't going to go into, "I got the cash on Tony Jones and I got a beeper." I don't see what relevance that has.

THE COURT: I am going to let him get into it and keep it just at that, if you will. So you've made your record.

MR. WALTER: I am going to ask for a curative instruction as far as the jury goes, to limit the knowledge of Tony Jones and not to are you going to say he is a bad character. He is a drug dealer. I am going to want a limiting instruction.

THE COURT: You are just getting it in to fully explain his contact with Tony Jones?

MR. WALTER: Why can't he just say, "I arrested him for suspicion of drugs"?

MR. LERITZ: He wasn't.

THE COURT: I am going to allow it, but do you have a curative instruction, the fact that this evidence comes in only to fully explain the contact of Detective Givens.

MR. WALTER: I would like you to orally give that to the jury.

MR. LERITZ: That's fine.

[The proceedings returned to open court.]

THE COURT: Before the Detective answers that question, ladies and gentlemen, this area that will be testified to, I am going to allow it only to explain Detective Givens, the contact Detective Givens has had with Tony Jones. Let's have the court reporter please read back the last question for the benefit of the jury.

[The last question was read by the reporter as follows: "What sort of property did Tony Jones have on him?"]

A Tony Jones had a large sum of money on him. It was a thousand plus dollars, and a beeper.

Q All right, and you say this was before the incident involving Sterling Jones?

A I believe so, yes.

■ Defense counsel's first "objection" occurred in response to the State's question of Givens, "What was he arresting Tony Jones for?" Defense counsel said: "Your Honor, at this time can I object? I think the purpose of Detective Givens here is to say that Mr. Jones has known Detective Givens before."

"It is universally held in Missouri that specific objections are required to evidence, arguments, or statements of counsel, and the objection must call the attention of the Court to the ground or reason for the objection." *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974). An objection such as "I object" does not preserve any question for review. "The trial court must be given an opportunity to rule upon an objection giving stated reasons for exclusion." *Id. See also State v. Hastings,* 477 S.W.2d 108, 111 (Mo.1972) (Statement "To which I'm going to object at the present time" insufficient.). The trial court did not err in overruling this general objection.

■ Defense counsel's second "objection" occurred in response to the question: "What sort of property did Tony Jones have on him?" Counsel said: "Object, your Honor. What does Tony Jones' property have to do—." A bench conference was then held.

During the bench conference, defense counsel said "I object as irrelevant." The following exchange then occurred:

THE COURT: Didn't you [defense counsel] limit your direct though that he only knew him from the National Food Store? I think he's got a right to go and give the whole story based on what Givens knows about Jones.

DEFENSE COUNSEL: Okay. I wasn't going to go into, "I've got the cash on Tony Jones and I got a beeper." I don't see what relevance that has.

THE COURT: I'm going to let him get into it and keep it just at that, if you will. So you've made your record.

Defense counsel then asked for an oral limiting instruction. The requested instruction was given before Givens resumed his testimony. Givens was asked: "What sort of property did Tony Jones have on him?" Givens replied: "Tony Jones had a large sum of money on him. It was a thousand plus dollars, and a beeper."

On direct examination of defendant, his counsel asked about previous contacts with Givens. Those questions, and defendant's answers, concerned a collateral matter.

Ordinarily, rebuttal testimony on a collateral matter is inadmissible. *Frye v. Meramec Marina, Inc.,* 673 S.W.2d 451, 454 (Mo.App.1984). However, once defendant presents evidence on a collateral matter, whether a trial court permits rebuttal evidence on the collateral issue rests in the sound discretion of that court. Allowing the answer that the witness had money and a beeper on him when Givens saw Jones previously is not an abuse of discretion.

■ At trial, defendant objected solely to that statement on the basis of relevance. In his motion for new trial and in his brief, defendant has expanded his objection. He now says the "evidence was collateral, highly prejudicial and not probative of the issue." Defendant claims it was prejudicial because at the time of his arrest the officers found $1,200 cash and a beeper on him. We disagree.

Defendant has run "afoul of both the proscription against interposing one objection at trial and another on appeal, ... and the rule that 'an objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else on appeal the trial court will not be convicted of error for overruling it.'" *Parry v. Staddon,* 769 S.W.2d 811, 814 (Mo.App. 1989) (quoting *McNabb v. Winkelmann,* 661 S.W.2d 825, 826 (Mo.App.1983)) (quoting *Negley B. Calvin, Inc. v. Cornet,* 427 S.W.2d 741, 746 (Mo.App.1968)).

The defendant also claims on appeal that the trial court abused its discretion when it allowed Officer Givens to testify that "Jones was brought in for suspected drug activity in the projects." The defendant did not object to or ask that the statement be stricken. Since the defendant sought no relief, we cannot find the trial court to have committed error. Defendant's point is denied.

■ Defendant's second point on appeal is that the trial court erred in sentencing defendant to one year in the Missouri De-

partment of Corrections because the sentence was an enhancement of his punishment and acted as a penalty for his refusal to plead guilty. Defendant cites *Thurston v. State,* 791 S.W.2d 893 (Mo.App.1990) for the proposition that: "A practice which discourages the Fifth Amendment right not to plead guilty, which deters the Sixth Amendment right to demand a jury trial and which chills the assertion of these constitutional rights by paralyzing those who choose to exercise them is patently unconstitutional. *United States v. Jackson,* 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138, 147 (1968)." *Thurston,* at 896.

In *Thurston,* this court found that a trial judge's practice of consistently imposing maximum sentences on defendants who exercise their rights to trial by jury violate the above mentioned constitutional guarantees. *Id* at 897. Here, defendant has shown no such consistent practice on the part of the judge. Important to the *Thurston* court was the fact that the trial judge showed no consideration for such factors as: the nature of the crime(s) and the background of the defendant. *Thurston* found the omission of these extremely relevant factors in the trial judge's determination of a proper sentence to "demonstrate an unvarying pre-determination of issues which require the exercise of judicial discretion on a case-by-case basis." *Thurston* at 897. Here, a review of the record reveals that the judge properly weighed the relevant factors of the nature of the crime committed and the background of the defendant and imposed a punishment which fit the crime as well as the criminal.[1] *See State v. Brown,* 668 S.W.2d 635 (Mo.App.1984); *State v. Davis,* 582 S.W.2d 342 (Mo.App. 1979).

The judgment is affirmed.

KAROHL and GRIMM, JJ., concur.

---

[1]. The judge while in chambers, on the record, stated to the defendant that he generally followed a jury's verdict but that he treated every case differently and he would certainly look at the defendant's record in determining a proper sentence.