**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Byron David BREWSTER,
Defendant/Appellant.**

**Byron David BREWSTER, Plaintiff,**

v.

**STATE of Missouri, Respondent.**

Nos. 58136, 60046.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 16, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 30, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Deborah B. Wafer, Asst. Sp. Public Defender, St. Louis, for defendant, appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

This is a consolidated direct appeal and appeal from denial of Rule 29.15 post conviction relief. The indictment charged felony murder in the second degree, § 565.021.-1(2) RSMo 1986, attempted robbery in the first degree, § 564.011 RSMo 1986, and armed criminal action, § 571.015 RSMo 1986. The jury's verdict convicted defendant on all three counts and assessed punishment at fifteen years, seven years and three years, respectively. The court entered judgment on the verdict and imposed consecutive sentences. We affirm.

Viewing the evidence in the light most favorable to the verdict, the evidence is as follows. On December 14, 1988, at approximately 7:00 p.m., defendant left his home at 5448 Geraldine, in the City of St. Louis, accompanied by a friend named Daryl. Daryl "wanted to go downtown to take care of some business." An unknown third party drove them to a McDonald's restaurant in downtown St. Louis. Daryl informed defendant he intended to rob a cab driver. They entered a cab at the Missouri Bar and Grill. Defendant took the back seat and Daryl got in the front. Daryl instructed the driver to take them to the area of Durant and Lillian streets. Daryl then pulled out a gun and aimed it at the cab driver. The cab driver accelerated hitting a parked Cadillac. Daryl shot the driver in the head. Defendant and Daryl fled returning to defendant's home. Several days

later the cab driver died from the gunshot wound.

### I

On direct appeal, defendant raises two claims of trial court error. First, defendant contends the trial court erred in overruling his motion to suppress statements made by him, both oral and written, and clothing seized from his home and later admitting these items into evidence. He avers that the police obtained this evidence "as a direct result of an illegal, investigatory detention of [defendant] and the custodial interrogation of [defendant] that occurred during the detention" and therefore, is inadmissable. Specifically, defendant argues he was under arrest when transported from his home to the police station because he was not free to leave nor was he free to leave at any point prior to signing a consent to search. He also claims the police lacked probable cause to arrest when they transported him to the station.

Our review of a trial court's ruling on a motion to suppress is limited to a determination of whether the decision is supported by substantial evidence, keeping in mind the court's opportunity to judge the credibility of witnesses. *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984). In a motion to suppress the state must show by a preponderance of the evidence the motion should be overruled. Section 542.296.6 RSMo 1986; *State v. Riley*, 704 S.W.2d 691, 692 (Mo.App.1986).

We review the ruling allowing evidence over trial objection and may consider the record of the hearing on defendant's motion to suppress. Officers Swiderski and Will testified at the hearing and the trial. Two additional witnesses, Francine and Michelle Douglas, who shared a residence with defendant, testified at trial concerning the investigation. Defendant never testified.

The officers' testimony established they arrived at approximately 7:00 p.m. at 5448 Geraldine to question defendant about a shooting of a cab driver that took place two days earlier. They had received a telephone tip from an anonymous informer implicating the defendant in the shooting. They advised defendant and Francine Douglas, who answered the door, why they were present and that they wished to talk to defendant about the assault. They asked if he would accompany them to the station. Defendant agreed. The station is approximately one block from defendant's residence. At the station the officers Mirandized defendant and informed him of the information they had received. Defendant denied any involvement in the assault and indicated that Michelle and Francine Douglas would verify his presence at home on the evening in question. The officers then went back to the house with defendant to question Michelle and Francine Douglas concerning defendant's alibi. Their comments did not confirm defendant's statement. At approximately 8:00 p.m., the officers returned to the station with defendant. They again Mirandized him and told him what Francine and Michelle had said. Defendant again denied any involvement. The officers then asked defendant if he was not involved in the incident would he consent to a search of his room. Defendant then signed a consent to search form. The police returned to defendant's home to search his room. Once they arrived they also received a consent form from the owner of the house, Francine Douglas. The search revealed clothing hidden in defendant's closet with blood stains. The officers returned to the station, advised appellant again of his Miranda rights, and informed him of their discovery. Initially, defendant denied ownership of the clothes. He then made a lengthy oral statement detailing his involvement in the shooting. He also agreed to make a short written statement. The officers testified that the statements were made after defendant was placed under arrest.

The testimony of both Francine and Michelle Douglas substantiated much of the officers' testimony. There were several significant variations. Both testified defendant was in handcuffs, but differ as to when this occurred. Michelle stated it happened at the house and Francine testified defendant was brought back to the house

the second time already handcuffed. Michelle also stated the officers looked in defendant's room on their first visit to the house.

The issue is whether the facts support a finding by the trial court that there was no illegal detention, making the fruits of that detention, the statements and clothing, inadmissable.

Defendant relies substantially on *State v. Riley*, 704 S.W.2d at 691. In *Riley*, the court found defendant under arrest because the police officers were in charge and control of defendant's movements. The officers stopped defendant one block from an accident where an automobile had been abandoned. Defendant consented to return to the scene where witnesses identified him. Defendant agreed to accompany the officers to the station where he was placed in a holding cell. "Although defendant acquiesced to a request by the police to accompany them to the station, submission to authority is not voluntary consent." *Id.* at 694.

We find *State v. Hicks*, 755 S.W.2d 242 (Mo.App.1988); *State v. Spivey*, 710 S.W.2d 295 (Mo.App.1986); and *State v. Sherrard*, 659 S.W.2d 582 (Mo.App.1983) controlling. In *Hicks*, police located the defendant at a rooming house. Defendant agreed to accompany police. Defendant did, however, testify at trial that he understood the police only wanted to talk to him. The court in finding nothing "inherently coercive" amounting to an arrest, noted the defendant was not "searched, handcuffed, or restrained in any way." *Hicks*, 755 S.W.2d at 244.

In *Spivey*, two officers contacted the defendant at his place of employment. They identified themselves as such, displayed their badges and requested that defendant come with them because someone at homicide wanted to talk with him. Defendant complied. At the station defendant was questioned and placed under arrest later that day. The court found defendant accompanied the officer voluntarily: his movement was not restrained nor was he coerced. Thus, no arrest occurred.

In *Sherrard*, police officers came to defendant's home and told him they wanted to talk to him about a shooting he reported. They asked him to go with them to the station. Defendant testified he agreed to their request. There was no illegal detention.

In this case there was substantial evidence from which the court could find defendant voluntarily accompanied the officers to the station. The police arrived at defendant's home, identified themselves and explained the nature of their visit. After requesting defendant to go back to the station, he agreed.

The question remains, however, whether the duration of time spent by defendant with the officers prior to his formal arrest constituted an illegal detention or arrest. We find it did not. The overwhelming weight of the evidence shows no coercion on the part of the officers and no restraint of defendant. Although the two women testified defendant was handcuffed, the officers testified he was not. The defense points out that Officer Swiderski testified that if the police verified defendant's alibi with Francine and Michelle Douglas, then they "would probably let him stay there at the residence." In response to the next question, however, the officers unequivocally stated defendant was free to go.

Given that credibility of witnesses is within the province of the trial court and the substantial evidence supporting the ruling, we find defendant was voluntarily in the company of the two police officers and was not, therefore, illegally detained. The statements and clothing were not the fruits of an illegal detention. Point denied.

## II

Defendant's second claim on direct appeal asserts the trial court abused its discretion by denying his challenge for cause of venireperson Hediger. He argues her tendency to favor the testimony of police officers prevented her from being a fair and impartial juror. As a result, defendant was denied a full panel of qualified jurors from which to make preemptory strikes.

The state argues the court did not err in denying the strike for cause because venireperson Hediger indicated she could follow the court's instructions and therefore, was rehabilitated. During voir dire venireperson Hediger indicated a tendency to "lean towards police officers." The defense sought to strike her for cause at which time the court began to question her. Venireperson Hediger told the court she understood the presumption of innocence. She twice told the court she "would try to be fair" when asked if she could be open minded and base her decision on the evidence and instructions. The trial court acknowledged that it thought she was not quite sure she could be fair. The court asked her for a third time if she could be open minded. At this point she responded "yes." The following colloquy then took place:

DEFENSE COUNSEL: Because the reason I'm asking you this is because when I asked you earlier about whether of not you'd listen to one police officer or lay witness or no police officer, I believe my reaction was that I thought you would tend to view the police officers' testimony a little less critically than you would when you said you were pro law enforcement.

VENIREMAN HEDIGER: If you had two that are about equal in testimony, I probably would lean toward the officer's testimony.

DEFENSE COUNSEL: Okay, That's all the questions I have.

THE COURT: Would you follow the instructions on the—this raises a little bit different point. We're not trying to badger you, but this is a little bit different point. As a juror, it's your function and your duty to listen to each witness who testified. Now, the Court, in some of its instructions, gives you guidelines or standards that you can follow by way of using them to judge the credibility of witnesses. Most people that reach our age in life, you develop your own ways of sizing people up. judging their truthfulness. Whatever standards you use, if you use the ones that the Court gives you, if you use your own that you've always used, or if you use any combination of the two, what's expected is that you will apply the same standards in judging the credibility with each witness. Okay?

VENIREMAN HEDIGER: Un-hun.

THE COURT: Let me then ask you this question. If you're selected to serve on this jury and judging the credibility of witnesses, *will you apply the same standards in evaluating* the testimony of each witness who comes before you?

VENIREMAN HEDIGER: *Yes.*

THE COURT: Okay, You understand you don't know whether you're going to believe them or not believe them until you hear them. But the question is, before you hear anyone testify, *will you use the same standards for judging truthfulness? Do you think you can do that?*

VENIREMAN HEDIGER: *Yes.* (Our emphasis).

Defense counsel again moved to strike for cause. The court denied the request.

■ A defendant has the right to be judged by a fair and impartial panel of jurors who will accord each witness' testimony the weight to which it is entitled. *State v. Ealy,* 624 S.W.2d 490, 493 (Mo. App.1981). A venireman whose answers indicate that he can not do this should be discharged for cause. *Id.* Such determinations are generally within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *State v. Royal,* 610 S.W.2d 946, 950 (Mo. banc 1981). Since the trial court is in a far better position to observe the demeanor of the veniremen, all doubts should be resolved in favor of the trial court's finding. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983). A determination of whether a juror is qualified must be based upon the entire voir dire examination, not only the initial response. *State v. Weatherspoon,* 728 S.W.2d 267, 271 (Mo.App.1987).

■ Generally, there is no error when the trial court overrules a challenge for cause of a venireman who initially expresses a tendency to believe police officers over

other witnesses, but who upon further questioning, indicates an ability to evaluate all testimony by the same standard and accord both sides a fair trial. *State v. Gray*, 657 S.W.2d 296, 299 (Mo.App.1983); *Ealy*, 624 S.W.2d at 493. However, where venirepersons have given equivocal answers to further questioning, appellate courts have reversed the refusal to strike for cause. *Weatherspoon*, 728 S.W.2d at 271. Thus, the test becomes whether the veniremen gave an equivocal or unequivocal response to questions intended to rehabilitate him. We have held there is sufficient rehabilitation when a venireperson who has expressed the tendency to give greater weight to police officer testimony, responds affirmatively to subsequent questions such as could the venireperson evaluate all witnesses by the same standards. *State v. Pitchford*, 556 S.W.2d 57, 61 (Mo.App.1977); *State v. Wraggs*, 512 S.W.2d 257, 259 (Mo.App.1974).

In this case we find statements to support a conclusion venireperson Hediger was rehabilitated. Although she indicated "a tendency to favor police officers" and that she "would try to be fair," once instructed that the law required her to apply the same standards in judging the credibility of witnesses she unequivocally indicated she would apply the same standards. Furthermore, she responded after inquiry by the court that she could be open minded and base her decisions solely upon the evidence heard in the courtroom. Given the trial court's opportunity to judge the qualifications of venirepersons based on its personal observations, we do not believe venireperson Hediger demonstrated such a bias that the denial of the challenge for cause constituted an abuse of discretion. Point denied.

### III

Defendant's remaining two points pertain to denial of Rule 29.15 relief after evidentiary hearing. He alleges the trial court violated his right to due process of law by imposing consecutive sentences in retaliation for defendant's decision to exercise his constitutional right to trial by jury. Specifically, defendant requests a remand for re-sentencing because the court penal-

ized him for demanding a jury trial and also because the court believed consecutive sentences would add to the general deterrent affect.

This court's review of a Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact, conclusions of law and judgment are clearly erroneous. *Thurston v. State*, 791 S.W.2d 893, 895 (Mo.App.1990). Such findings and conclusions are clearly erroneous only when, after review of the entire record, this court is left with a definite and firm impression that a mistake has been made. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

■ The court did not enter findings of fact and conclusions of law on this claim of error. Defendant had the opportunity to present evidence on all issues raised in his Rule 29.15 motion. He chose to do so on only one issue—ineffective assistance of counsel. Thus, the court need not make findings and conclusions because this issue was unsupported by substantive evidence at the hearing. We find no need to remand for findings and conclusions. There is no dispute of the relevant underlying facts. All are contained in the sentencing transcript. The question is the legal effect of what the court stated at that hearing. Where as here, the correctness of the motion court's action is clear from the record, there is no need to remand for such findings and conclusions. *Barton v. State*, 802 S.W.2d 561, 565 (Mo.App.1991). No additional findings or conclusions are necessary to determine the court did not err in denying a request for re-sentencing.

At the sentencing hearing, defendant stated he wished he could prove that he didn't know this would happen. He indicated a sense of guilt for not stopping what had happened and not reporting it. However, he also stated he did not think he could have prevented it. The trial court found no remorse in defendant. It based this finding on defendant's comments indicating he went to trial because he felt he was not responsible for the shooting. In short, the court believed defendant did not

understand the concept of joint liability and that Daryl's acts during the robbery attempt were also his acts. The court stated it disagreed with the jury's assessment of sentences. It believed the sentences should have been higher. The court also indicated driving a cab is a dangerous occupation and the purpose of sentencing is deterrence as well as punishment. The consecutive sentencing was carefully considered. It was not imposed solely because defendant refused to plead guilty.

Defendant relies on *Thurston,* 791 S.W.2d at 893 and the federal cases cited therein. The general rule expounded by these cases is enhancement of punishment due solely to "defendant's refusal to plead guilty and to exercise his right to have guilt proven beyond a reasonable doubt" is unconstitutional. *Id.* at 896.

In *Thurston,* the trial court consistently sentenced prior and persistent offenders to the maximum sentence when they demanded trial by jury. The appellate court found the trial court abused its discretion in imposing such a sentence when the sole reason articulated by the trial judge for doing so was refusal to plea bargain and insistence upon trial by jury. The court reversed and remanded the judgment denying movant's motion to vacate and set aside the sentence.

The primary factor in *Thurston* necessitating reversal was the trial court's failure to consider other factors required by § 557.036 RSMo 1986. It enhanced punishment *solely because* of defendant's refusal to plead guilty and choosing to exercise his right to have his guilt proven beyond a reasonable doubt. Where other factors were considered by the court, the sentences did not run afoul of movant's constitutional guarantees. *See State v. Jones,* 806 S.W.2d 702 (Mo.App.1991); *State v. Davis,* 582 S.W.2d 342 (Mo.App.1979).

Furthermore, § 557.036 imposes upon the courts of this state the duty to undertake a case by case, defendant by defendant, evaluation in order to fashion an appropriate punishment "which not only fits the crime but which also fits the criminal." *Thurston,* 791 S.W.2d at 897.

In this case there is no indication the court's sentence punished movant solely for going to trial. Rather, it appears the court considered several factors when deciding concurrent or consecutive sentences. The court did include defendant's lack of remorse when it stated "although [defendant] has voiced remorse he feels no guilt for this. He never did before the trial and that's why he went to trial." The court also noted it considered pre-sentencing reports and the necessity to create a deterrent to protect other cab drivers in such a dangerous occupation. The court felt a twenty-five year old with defendant's life experiences should not be released from culpability by saying he made a bad judgment as to whom he associated with.

The court has discretion to determine whether sentences run concurrently or consecutively. *State v. Loewe,* 756 S.W.2d 177, 184 (Mo.App.1988). The court in exercising this discretion clearly indicated defendant's lack of remorse, by failing to acknowledge his responsibility in the shooting and the necessity in creating a deterrent, led to this decision. This court has not been left with a definite and affirmative impression that a mistake has been made. *Sanders,* 738 S.W.2d at 857. Point denied.

## IV

Finally, defendant claims the motion court erred in overruling his Rule 29.15 motion because defendant received ineffective assistance of counsel when "counsel failed to move to exclude or to object to or to move the court to strike from the record and to instruct the jury to disregard testimony in evidence relating to a silver .38 gun." Defendant claims prejudice although the gun was never admitted into evidence because the gun was "paraded" before the jury. Thus, "without directions from the court to disregard this evidence [the jury] would naturally assume that the gun was evidence of [defendant's] guilt for the death by shooting of Mr. Watkins."

Defense counsel filed no pre-trial motion in limine to exclude the gun. At trial the

state presented four witnesses who testified about the gun. Defense counsel did not object to this testimony. When the prosecution formally offered the gun into evidence defense counsel objected on the basis there was no evidence linking that gun to the defendant: no one testified that they saw defendant in possession of the gun and nothing linked the gun to the fatality. The court sustained defense counsel's objection.

At the 29.15 hearing defense counsel stated the gun in question both prejudiced and did not prejudice defendant. It was prejudicial in that the gun was paraded before the jury with no foundation connecting it to defendant. However, defense counsel stated there was no basis upon which to object when the four witnesses testified about the gun because the prosecution was entitled to try to lay a foundation. On the other hand, the testimony was advantageous because it was never connected to defendant. Defense counsel reasoned the jury was capable of perceiving the gun was not connected to the defendant: that it was part of his defense strategy to let in the evidence of the gun without objection because it put "a bigger hole in [prosecution's] case." Defense counsel felt that if he asked the court to instruct the jury to disregard the testimony the jury would then not consider this.

The motion court concluded defense counsel's failure to object was part of his trial strategy that the state would be less likely to meet its burden of proof if it could not link the weapon to the crime.

■ To prove ineffective assistance of counsel defendant must show counsel fell below the customary level of skill and diligence, and prejudice resulting therefrom. *Sanders*, 738 S.W.2d at 857; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There is a strong presumption counsel's conduct was reasonable because it is all too easy with the benefit of hindsight to conclude an act or omission unreasonable. *Sanders*, 738 S.W.2d at 858. Trial strategy generally does not constitute ineffective assistance of counsel. *Morrow v. State*, 782 S.W.2d 788,

791 (Mo.App.1989). If counsel engages in reasoned decision making regarding trial strategy, he is not ineffective. *See Sanders*, 738 S.W.2d at 858.

■ Here, the motion court concluded counsel's actions constituted trial strategy. Counsel so testified at the evidentiary hearing. The court is the trier of fact, free to determine witness credibility. *Shaw v. State*, 766 S.W.2d 676, 680 (Mo.App.1989); *Morrow*, 782 S.W.2d at 790. The actions of counsel at trial do not refute his claim of trial strategy. He filed no motion in limine to exclude the gun. Nor did he object until the state attempted to admit the evidence. Although counsel's closing argument did not expressly refer to the absence of any gun in evidence, it did stress the state carried the burden of proof and in this failed to prove its case.

■ Furthermore, defendant failed to demonstrate prejudice—that the outcome of the trial would probably be different. Defendant states only that the jury "would naturally assume that the gun was evidence of [defendant's] guilt." The case law cited by defendant does not support this position and he puts forth no reasons as to why the jury would probably use this evidence against him where the gun was not admitted, rather than as evidence favorable to him. We are unconvinced a mistake has been made. Point denied.

We affirm the conviction and denial of Rule 29.15 relief.

SMITH, P.J., and AHRENS, J., concur.