**STATE of Missouri, Respondent,**

v.

**John Henry WRIGHT, Appellant.**

**No. WD 55436.**

Missouri Court of Appeals,
Western District.

June 22, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied
Sept. 21, 1999.

Emmett Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

Before Judge JAMES M. SMART, Presiding, Judge FOREST W. HANNA and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant John Wright appeals his convictions on two counts of child molestation in the first degree, in violation of Section 566.067, RSMo 1994, for which he received consecutive two-year sentences. On appeal, Defendant asserts: (1) the trial court erred in overruling his motion for acquittal because the uncorroborated trial testimony of the victims was insufficient evidence to prove his guilt beyond a reasonable doubt; and (2) the trial court abused its discretion in imposing consecutive sentences, because, the court made clear it did so in order to punish him for exercising his right to proceed to trial. Finding merit in the latter contention, we affirm the conviction but vacate the sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts at trial established that in July 1997 the Defendant, John Wright, lived with his nephew, David Grippando, David's wife, Lisa, and their three children. On July 19, 1997, David and Lisa took their son Anthony and their then nine-year old daughter Tasha, as well as their seven-year old niece Amanda and their nephew Andre, to Worlds of Fun amusement park for the day. They arrived home from the park late that evening. Tasha and her cousin Amanda fell asleep on a couch in the Grippandos' living room.

Early the next morning, Tasha woke up because she felt someone lifting her shirt and rubbing her breasts while she was lying on the couch sleeping. She stated she looked up and saw her great-uncle, Defendant, standing above her. She said she told him to quit and that Defendant told her he was just trying to cover her up. She then turned over and went back to sleep. Amanda also states she woke up early that morning because her shirt was lifted up and Defendant was rubbing her "boobies" and her "body."

Mrs. Grippando was also up early that next morning in order to go to work, and she saw Defendant wandering through the house. Mrs. Grippando noted that this was unusual because Defendant normally did not get up and walk around the house early in the morning. She states that when she went downstairs, Defendant went into the kitchen and the two girls sleeping on the couch got up "very quickly" and came to stand by her. Mrs. Grippando asked the girls if something was wrong. Tasha told her that while she was sleeping, she felt her shirt going up repeatedly and that she kept pulling it down, and as she looked up, she saw Defendant standing over her. She told him to quit and he said he was covering her up, although both girls said they had no covers on the couch. Mrs. Grippando further states that Amanda told her Defendant lifted her shirt and touched her body. After hearing both girls' stories, Mrs. Grippando woke Mr. Grippando and had both girls tell him what they had told her. Mr. Grippando then went downstairs and told Defendant to leave the house.

The next day, Tasha and Amanda were separately interviewed by Detective Jill Voltmer in a private interview room at the St. Joseph police station. Amanda said that Defendant had touched her and Tasha's "boobs," meaning breasts, under their shirts, and "body," meaning vaginal area, outside their clothing. Defendant was charged with two counts of child molestation and was tried before a jury on December 16, 1997.

At trial, both young girls took the stand and testified before the jury. Tasha, then ten years old, testified she was positive that it was the feeling of Defendant's hands rubbing her breasts that woke her that next morning. She further testified that she told both her mother and her father that Defendant had touched her on her skin, under her shirt. Amanda, still seven years old, testified that Defendant touched her breasts with her shirt up, and touched her body with her shorts on. Defendant did not present any evidence.

At the close of the trial, the jury returned verdicts of guilty on each count, and recommended a sentence of two years for each offense. The trial judge sentenced Defendant to two consecutive two-year terms, explaining that he ran the sentences consecutively because there were two victims and because Tasha and Amanda were further victimized by having to come to court and testify in front of Defendant, the judge and the jury. Defendant appeals. We find that the evidence was sufficient to support the verdict, but that the court erred in punishing the Defendant for choosing to go to trial when imposing sentence, and remand for resentencing.

## II. STANDARD OF REVIEW

■■■ When reviewing the sufficiency of the evidence supporting a criminal conviction, we defer to the trier of fact. *State v. Grim*, 854 S.W.2d 403, 414 (Mo. banc 1993). Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id., citing State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989). We view the evidence in the light most favorable to the verdict. *Id.*

## III. SUFFICIENCY OF THE EVIDENCE AND DESTRUCTIVE CONTRADICTIONS DOCTRINE

Defendant argues the trial court erroneously overruled his motion for judgment of acquittal at the close of the evidence because the evidence was insufficient to support a guilty verdict. Defendant asserts the doctrine of "destructive contradictions" applies because the trial testimony of the two victims was so incredible and contradictory that it could not be believed by rational people. He specifically alleges that the victims' testimony required corroboration because: (1) the two victims were the only source of proof against him; (2) their pre-trial statements and trial testimony were contradictory; and (3) their trial statements were impeached through the testimony of other witnesses.

■■■ Generally, corroboration of the victim's testimony in criminal sexual offense trials is not mandated in order to make a submissible case. *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). Our Supreme Court does, however, recognize an exception to the general rule under the "destructive contradictions" doctrine. The doctrine is properly invoked only when the testimony is so "inherently incredible, self-destructive or opposed to known physical facts" on a vital point or element that reliance on the testimony is necessarily precluded. *T.L.C. v. T.L.C.*, 950 S.W.2d 293, 295 (Mo.App.1997) (citations omitted). *See also State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995); *State v. Harris*, 620 S.W.2d 349 (Mo. banc 1981). The doctrine specifically does not apply to contradictions between the victim's trial testimony and prior out-of-court statements, to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive. *T.L.C.*, 950 S.W.2d at 295. Further, it does not apply where the inconsistencies are between the victim's statements and those of other witnesses; the latter types of inconsistencies in testimony simply create questions of credibility for jury resolution. *State v. Marlow*, 888 S.W.2d 417, 422 (Mo.App.1994); *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992).

■■■ Defendant asserts that the doctrine applies here, because no evidence at trial corroborated Tasha's testimony that Defendant touched or rubbed her breasts, and all credible evidence given by other witnesses at trial contradicted that claim. In support, Defendant notes that Tasha testified at trial that it was the feeling of Defendant's hands rubbing her breasts that woke her that morning, and that she told this to both her mother and her father. This was contradicted, he argues, by Mrs. Grippando's testimony that Tasha had said she woke up when she felt her shirt raising up, and Amanda's cross-exam-

ination testimony that she did not actually see Defendant touch Tasha.

Even were we to consider the issue whether the touching of Tasha's breasts is what woke her up to be a vital issue, as opposed to a collateral issue, it does not call into play the destructive contradictions doctrine. As stated above, contradictions between the victim's testimony and the testimony of other witnesses at trial does not invoke the doctrine; it applies only to contradictions in the victim's own trial testimony. It does not apply here.

■ Defendant further contends the totality of Tasha's testimony was incredible and impeached by other witnesses on issues such as whether Defendant was at the house when the family arrived home from Worlds of Fun, what Tasha and Amanda did when they arrived home from Worlds of Fun, and exactly where Mrs. Grippando was when Tasha and Amanda told her what Defendant had done. These matters, however, are collateral or non-essential issues and affect only the credibility of the witness and the weight to be given to the evidence, not its admissibility. *State v. Gatewood,* 965 S.W.2d 852, 858 (Mo.App. 1998); *State v. Kuzma,* 751 S.W.2d 54, 58 (Mo.App.1987).

■ Defendant also argues that Amanda's trial testimony that Defendant rubbed her boobies with her shirt up and touched her body with her shorts on was inconsistent with some of her statements on cross-examination. However, there was also evidence from Tasha as to what occurred, and while Amanda's testimony on direct and on cross-examination had some inconsistencies, her direct testimony that Defendant touched her breasts with her shirt up was consistent with Tasha's own trial testimony and with both girls' pre-trial statements. Defendant, in effect, asks us to ignore both victims' in-court testimony and to ignore the fact that they both made similar statements to investigating detectives, and to reverse based simply on inconsistencies between them as

to mostly collateral matters, and to ignore the other consistent testimony. We decline to do so for we find that, while the evidence provided a basis for Defendant's counsel to argue that Tasha and Amanda's testimony was not credible, their testimony was not so inherently contradictory as to be devoid of all probative force or value. It is well-established that, because a young child is less skilled in articulation and can become understandably confused in a court setting, a child can contradict herself in some respects without leaving a reasonable juror unconvinced as to the veracity of her testimony. *Silvey,* 894 S.W.2d at 673. This is especially true when inconsistent or contradictory statements are made by a young child relating a sexual experience. *Id.* Thus, "it is not uncommon for there to be some contradictions or memory lapses during the testimony of a child of tender years." *State v. Harvey,* 641 S.W.2d 792, 800 (Mo.App.1982).

Here, in light of the two victims' ages and the sexual content of their testimony, it was not incomprehensible or illogical that any discrepancies were attributable to memory lapses and articulation difficulties. The issue of both victims' credibility and the effect of any conflicting or inconsistent testimony was for the jury to determine. *State v. Barnes,* 980 S.W.2d 314, 320 (Mo. App.1998). Point I is denied.

### III. INCREASE IN SENTENCE BASED ON DECISION TO GO TO TRIAL

Defendant argues the trial court erred and abused its discretion in sentencing him to consecutive two-year sentences because the trial court's sentence punished him for exercising his right to have his case tried to a jury. At sentencing, the trial court stated:

In this case, I am going to sentence you in accordance with the jury's assessment and verdict. I am not going to order the sentences to run concurrent. There are two separate victims in this case. You have not accepted responsibility for your crime. *And, in this case,*

*your victimization of these two young girls was magnified or aggravated by the fact that they were required to come in and testify.*

*And it was obvious to the Court that it was a traumatic event for them to come in here to testify in front of you, as well as the 12 jurors and the Court, as to your activities last July.*

*And so with those factors and consideration,* Mr. Wright, I am going to sentence you under Count I to a term of two years in the Department of Corrections; and under Count II for another two year term of imprisonment. Count II is to run consecutive to Count I.

(emphasis added). Defendant claims these comments indicate that the court was punishing him for his right to go to trial.

■■■■ Normally, it is left to the trial court's discretion whether to impose concurrent or consecutive sentences. *State v. Martin,* 852 S.W.2d 844, 854 (Mo.App. 1992). And, in fact, Section 557.036.1 provides in relevant part:

[T]he court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly.

§ 557.036.1, RSMo 1994. The court cannot use the sentencing process to punish a defendant for exercising his right to proceed to trial, however. *See, e.g., State v. Lindsey,,* 996 S.W.2d 577 (Mo.App. W.D. 1999); *State v. Vaughn,* 940 S.W.2d 26, 29 (Mo.App.1997). "Whether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence." *Id., citing, U.S. v. Marzette,* 485 F.2d 207 (8th Cir.1973). *See also Alabama v. Smith,* 490 U.S. 794, 798, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865, 872 (1989); *United*

*States v. Sales,* 725 F.2d 458, 460 (8th Cir.1984).

■■■ Here, the trial court's comment that, "in this case, your victimization of these two young girls was magnified or aggravated by the fact that they were required to come in and testify," as well as his comment that it was traumatic, "for them to come in here to testify in front of you, as well as the 12 jurors, and the Court," indicate that Defendant's sentence was enhanced for challenging the State's evidence and proceeding to trial. This conclusion is buttressed by the court's own statement that it was "with those factors and consideration[s]" in mind that he sentenced Defendant to two consecutive two-year terms. This would appear to violate the constitutional right to jury trial as set out in the cases just discussed.

Nevertheless, the State argues that under *State v. Brewster,* 836 S.W.2d 9 (Mo. App.1992), the enhancement of punishment based on a defendant's refusal to plead guilty is condemned only when the court *solely* considers the defendant's exercise of his right to trial in sentencing. Thus, the State asserts, here, the sentencing court did not err because it did not enhance Defendant's punishment *solely* because he refused to plead guilty.[1] The court also considered the fact that there were "two separate victims" and that Defendant "[had] not accepted responsibility for [his] crime."

We disagree with the State's interpretation of *Brewster.* Although *Brewster* contains the language cited by the State, in context it is evident that it simply meant that no constitutional violation occurred if there were other reasons which also caused the court to impose the same sentence, so that the comment on the fact defendant went to trial was not determinative. This was also the basis of the deci-

---

1. The State also contends that Defendant has failed to establish a violation because he does not show that the sentencing court had a practice of giving maximum sentences to all

those who refuse to plea bargain. This factor, however, goes to a challenge of a court's consistent sentencing pattern, which is a separate issue not raised in this case.

sion in *State v. Martin*, 852 S.W.2d at 854. To the extent that the State reads *Brewster* and similar cases more broadly, to state that the court can properly enhance the Defendant's sentence in part based on Defendant's decision to have a trial by jury, such a reading would violate principles underlying the cases cited above that the exercise by a defendant of his constitutional right to a jury trial can have no bearing on his sentence.

Here, the court specifically stated on the record that his decision to order consecutive sentences was influenced by Defendant's decision to go to trial and so to "require" the victims to testify. Of course, as Defendant notes, Defendant's decision to go to trial did not force the victims to testify in front of Defendant or the court or jury, for the court could, but did not, excuse them from giving open-court testimony pursuant to Section 491.680, RSMo 1994.[2] The fact that, after-the-fact, the court decided testifying was an especially traumatic experience for the victims and one which should have been avoided, does not justify additional punishment for Defendant's exercise of his right to trial by a jury. We also note that central to the case against Defendant was the credibility of the victims' allegations of molestation, and in cases involving credibility it is in no way unusual to want to have credibility determined by the jury rather than by the court. But, even were this not the case, Mr. Wright had a right to a trial by jury without fear of punishment for assertion of that right. For these reasons, in contrast to our recent decision in *State v. Lindsey*, 996 S.W.2d. 577 (Mo.App. W.D. 1999), here we find the court's comments at the time of sentencing indicate that he made Defendant's sentence longer than it otherwise would have been in part based on the latter's decision to go to trial. Any enhancement of his sentence based on this fact improperly punished him for exercis-

ing his right to a full and fair trial to a jury. *Lindsey*, at 582 (Ellis, J., dissenting); *Vaughn*, 940 S.W.2d 26; *Marzette*, 485 F.2d 207.

It is not clear from the record how the court below would have sentenced Defendant if it had not taken into account his decision to go to trial. Accordingly, the conviction is affirmed but the sentence is vacated and the case is remanded solely for the purposes of resentencing. The fact Defendant chose to go to trial shall play no role on resentencing.

Presiding Judge JAMES M. SMART and Judge FOREST W. HANNA, concur.

JAMES M. SMART, Jr., Presiding Judge, concurring.

I concur in the decision to vacate the sentence and to remand for resentencing. I do so only because of the *appearance* based on the trial court's remarks, that Wright's decision to plead not guilty and request a trial was a substantial factor in sentencing. I do this reluctantly, however, because there is reason to doubt that the sentence actually violated defendant's rights in any way.

The trial judge did not say, "Well, Mr. Wright, in my view, a total term of two years would ordinarily be appropriate for these offenses, but because you decided to plead not guilty and request a trial, I am going to punish you for that decision by giving you the maximum I can give you under the circumstances. I am going to run the two two-year sentences consecutively." Nor, on the other hand, did the trial court say, "Well, Mr. Wright, I am going to go with the jury's recommendation of two two-year sentences, which I will run consecutively because there are no particular mitigating factors which dictate that I run them concurrently. If you had

---

2. Section 491.680 provides the court with the ability to order a video recording deposition of an alleged child victim to be used as evidence at trial in any criminal prosecution under chapter 565, 566 or 568, if significant emotional or psychological trauma to the alleged child victim would result from testifying in person.

elected to take responsibility for your actions, and to plead guilty, I might have been inclined to be lenient. Perhaps I would have run the sentences concurrently. But, under the circumstances, I am inclined not to grant clemency."

If this case had involved remarks identical to either of the foregoing, the analysis would be easy. In the first hypothetical, we would readily declare that the sentence violated the rights of the defendant. In the second hypothetical, however, the sentence would not have violated the defendant's rights. The theoretical norm is a plea of not guilty, because there is no legal duty to plead guilty. Therefore, a decision to plead guilty generally should be considered a factor warranting clemency. It can be difficult, however, if not impossible, in analyzing a few short remarks made at the time of sentencing, to know the extent to which the actual sentence considerations were more akin to the first hypothetical than the second.

Sentencing is the province of the trial court, not the appellate court. Trial judges must be allowed great discretion in sentencing matters. There are many, many factors for the trial court to consider in sentencing. Sentencing is a complex and difficult task that seldom lends itself to a mechanical matrix. Judges do not always feel obligated to set forth for the record with great elucidation their mental processes. ·At times, a decision to withhold clemency may appear to be a decision to increase punishment. It is important to grant substantial latitude to the judge's oral remarks, allowing the trial court the benefit of the doubt that proper grounds were employed. However, where the trial court's language is such as to create an appearance, under the circumstances of the case, that the court is punishing the defendant for exercising the right to plead not guilty, it is appropriate to vacate the sentence and remand for resentencing. In doing so, it is inappropriate for us to suggest to the trial court what is or is not a proper sentence within the range of punishment provided by law. We rely upon the integrity of the trial court to take any corrective action which is necessary.