STATE of Missouri, Respondent,

v.

Merle C. LINDSEY, Appellant.

No. WD 54049.

Missouri Court of Appeals,
Western District.

Submitted Nov. 19, 1998.

Decided May 4, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 29, 1999.

Application for Transfer Denied
Aug. 24, 1999.

John W. Simon, Jefferson City, for Appellant.

Mikeal R. Lorraine, Fulton, for Respondent.

Before BRECKENRIDGE, P.J.; LOWENSTEIN, ULRICH, HANNA, SPINDEN, SMART, ELLIS, LAURA DENVIR STITH, EDWIN H. SMITH, HOWARD, and RIEDERER, JJ.

SMART, Judge.

Merle C. Lindsey was convicted, after jury trial, of driving while intoxicated in violation of § 577.010, RSMo 1994.[1] He challenges the sentence of ninety days confinement imposed by the trial court. Lindsey contends that the trial court erred in sentencing him to ninety days of confinement because the sentence reflected retaliation against him for exercising his right to trial by jury. He also complains that the sentence constituted cruel and unusual punishment in view of his current health because of the risk that he will die while serving his sentence in a county jail. Lindsey also challenges the trial court's action in overruling his challenges for cause to two members of the venire panel. Finally, Lindsey complains of irregularities in the trial court's acceptance of the jury's verdict on the basis that one of the jurors was taken to the hospital after the verdict was reached and was never polled.

Because we conclude that discussion of Lindsey's last three points would have no precedential value, we will affirm as to those points by summary order pursuant to Rule 30.25(b), and are furnishing to the parties a memorandum of the reasons for our decision as to those issues. In this opinion, we will address only the issue of whether the sentence of the trial court constituted unlawful retaliation for exercising the right to plead not guilty.

### Factual Background

On April 17, 1996, at 9:45 p.m., Missouri State Highway Patrolman Ken Robinson investigated a vehicle stopped in the eastbound passing lane of I–70 in Callaway County. Trooper Robinson discovered Lindsey in the car, lying on his back with his feet outside the car and the car door open. The headlights of the car were on, the key was in the ignition and the gear shift was in neutral. Trooper Robinson was concerned about removing Lindsey from the car and moving the vehicle because it was an obvious traffic hazard.

Eventually, with the assistance of another highway patrolman, Corporal Charles Easely, Trooper Robinson removed Lindsey from the car. Trooper Robinson formed the opinion that Lindsey was intoxicated, noting:

Mr. Lindsey had glassy, bloodshot eyes. He reeked of alcoholic beverage, the odor of alcoholic beverages. His clothes were mussed. His zipper was open when I first encountered him. He was—His speech was slurred and incoherent. He seemed to not be real sure of where he was or what he was even about.

When Trooper Robinson asked Lindsey whether he had been drinking, Lindsey admitted that he had "consumed a few beers" and some vodka. Lindsey also told the trooper that he had arrhythmia and was taking medication for that condition.

Trooper Robinson arrested Lindsey for driving while intoxicated. Lindsey asked the trooper several times what state he was in. At this point, Trooper Robinson conducted an inventory search of Lindsey's car before a tow truck arrived to take it away. When the trooper returned to his car to transport Lindsey, he noticed that Lindsey had urinated upon himself. Lindsey was then administered field sobriety tests. When asked to recite the alphabet, Lindsey reached the letter "G" before remarking, "Oh, hell with this sh—."

Lindsey was taken to Callaway Community Hospital in Fulton, Missouri. After the implied consent warning was read to him, Lindsey consented to a blood test. Reynold Rose, a registered nurse, drew a blood sample from Lindsey's left arm. Lindsey was found to have a blood alcohol level of .25.

Prior to trial, Lindsey requested a change of venue. The case was tried to a jury in Boone County. Lindsey testified in his own defense. He testified that he was seventy-eight years old at the time of his arrest and was in the process of moving from Overland Park, Kansas to Mun-

---

1. All statutory references are to Missouri Revised Statutes 1994, unless otherwise indicated.

cie, Indiana. Lindsey stated that he had an arrhythmic heart, for which he was taking medication. Lindsey testified that during his journey he stopped in Kansas City, Missouri, and had two beers. He further testified that he had several drinks consisting of vodka and orange juice which he drank behind the wheel during the journey.

Lindsey claimed he got sleepy and attempted to exit at Columbia, Missouri, but was prevented from exiting the highway by a truck which was following too closely. Lindsey claims that because he was sleepy he decided to pull to the shoulder of the highway. Although Lindsey acknowledged he did not remember all of what occurred, he disputed the assertion that he had stopped in the passing lane of the highway. He also disputed the fact that blood had been drawn. He based this upon his observation the following day that there was no marks or band-aids on his arm.

Following the verdict in the case, at the time of sentencing, the State asked the court to sentence Lindsey to ten days in the county jail and to impose a fine of $500.00. Defense counsel requested that Lindsey not be sent to jail. The following exchange took place:

THE COURT: All right. I show the parties are heard on the disposition. Punishment is fixed at 90 days in the Boone County Jail and a fine of $500, plus court costs and the $10 Crime Victim Compensation Fund judgment. Do you wish an appeal bond set?

MR. DODSON: Yes, Judge. You're not suspending the jail sentence?

THE COURT: No. The set of facts in this case were as bad as they could have possibly been. And even more remarkable was the Defendant's contention that he—accepting absolutely no responsibility or even acknowledging any wrongdoing. So most of your arguments, you know, as far as not repeating the offense, if somebody doesn't acknowledge they even did anything wrong, it would be hard to take the position that it won't happen again.

And I would agree with you the circumstances were highly unusual. It's absolutely amazing that no one got killed out there during this particular incident.

The Defendant's version of what happened, while he was on the stand, was completely at odds with all the evidence. He did not believe or accept the testimony of any of the State's witnesses; from the highway patrolman, to the nurse that drew the blood, to the chemist that ran the test. And there's been no accepting any responsibility for this event.

So—And since it was so incredibly dangerous and that sort of thing, it would be—it would not be in any way advisable for his well-being, or society at large, to just—certainly not to just do a fine and a nominal, minimal amount of jail time. It absolutely would be not acceptable to suspend imposition of sentence.

Lindsey appeals.

■ Lindsey contends that the trial court erred in imposing upon him a sentence nine times longer than the sentence recommended by the State which consisted of "a fine of $500 plus ten days in the county jail." Lindsey argues that the record establishes that the trial court imposed this harsher sentence upon him in retaliation for exercising his right to trial by jury.

■ Section 557.036.1 provides that the sentencing court is to determine the sentence in view of "all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant. . . ." The trial court has a duty to undertake a case by case, defendant by defendant, evaluation in determining an appropriate punishment fashioned to both the crime and the criminal. *State v. Brewster*, 836 S.W.2d 9, 15 (Mo.App.1992). We presume that the trial court's experience and expertise enable the judge to consider appropriate sentencing factors and to disregard improper matters. *State v. Vaughn*, 940 S.W.2d 26, 30 (Mo.

App.1997). The court exercises very broad discretion in its sentencing function. *State v. Burton,* 355 Mo. 792, 198 S.W.2d 19, 22 (1946). Review is for abuse of discretion shown by "a motive [ ] of partiality, prejudice or oppression or induced by corruption." *Id.*

■ "A court may not use the sentencing process to punish a defendant, notwithstanding his guilt, for exercising his right to receive a full and fair trial." *Vaughn,* 940 S.W.2d at 29 (quoting *United States v. Sales,* 725 F.2d 458, 460 (8th Cir.1984)). In *Thurston v. State,* 791 S.W.2d 893, 896 (Mo.App.1990), the court, citing *United States v. Medina–Cervantes,* 690 F.2d 715, 716 (9th Cir.1982), explained:

> It is well settled that an accused may not be subjected to more severe punishment simply because he exercised his right to stand trial.... The "courts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice."

■ While it is fundamental that a court cannot be permitted to punish a defendant more harshly merely because the defendant exercised his right to plead not guilty, a court may certainly take into account the character of the defendant, including his attitude concerning the offense. *Thurston,* 791 S.W.2d at 897. A judge is charged with the responsibility of imposing a punishment that fits both the offense and the offender. *State v. Jones,* 806 S.W.2d 702, 706 (Mo.App.1991). In this case, the judge's statements reflect consideration of both Lindsey's crime and Lindsey himself. The first part of her remarks shows her primary concerns:

> The set of facts in this case were as bad as they could have possibly been. And even more remarkable was the Defendant's contention that he—accepting absolutely no responsibility or even acknowledging any wrongdoing. So most of your arguments, you know, as far as not repeating the offense, if somebody doesn't acknowledge they even did anything wrong, it would be hard to take the position that it won't happen again.

> And I would agree with you the circumstances are highly unusual. It's absolutely amazing that no one got killed out there during this particular incident.

The judge also mentioned the fact that Lindsey did not "believe or accept the testimony of the state's witnesses." The defendant suggests this remark is highly suspicious because it indicates the court was punishing Lindsey for pleading not guilty. It is true that this remark might seem superfluous because defendants who plead not guilty generally have their own version of the facts. A careful review of the evidence, however, sheds light on the court's comment.

Lindsey's testimony was unusual. Though he could not remember many facts related to his arrest, including his trip to the hospital to have his blood taken to determine his BAC, he still maintained that he was not impaired by alcohol. He rejected the proposition that his blood alcohol level was .25 percent. He denied that the nurse ever drew blood from him, not because he remembered the events of that night, but because when he looked at his arm *the next day,* he could find no marks or band-aids. This was persuasive evidence, he suggested, that the nurse never drew his blood. He seemed completely oblivious to the fact that his lack of memory undercut his contention that he was not intoxicated.

Lindsey maintained that he was not intoxicated, although he acknowledged that he had been drinking two beers earlier that day and three to four vodka drinks mixed with orange juice while driving along I–70. He blamed his erratic behavior on his heart arrhythmia. Lindsey said he got sleepy and decided to pull off the traffic lanes of the highway to take a nap in his car on the shoulder of the highway. He said he could not exit the highway because, when he wanted to exit at Columbia, there was a big truck so close to him that he was "afraid" to exit. He did not explain why he did not take advantage of any of the other exits between Columbia and the 160–mile marker, where his car

was stopped. He denied that his car was in a traffic lane, that his car door was open and that his feet were out of the car at the time the officers arrived.

The law does not expect or require the sentencing court to ignore the accused's own testimony offered at trial. For instance, a court may take into account a good faith belief that an accused has committed perjury.[2] In this case it is likely that the court did not believe that Lindsey perjured himself. Instead, Lindsey's apparently unshakeable belief in his own version of reality might have caused the court to conclude that Lindsey was more dangerous than the usual offender. The court could have believed Lindsey was under the delusion that his version of the facts was not only accurate, but also eminently plausible and reasonable. In other words, the court may have reasonably concluded that Lindsey was not only out of touch with the events of the night in question, but also unwilling to grasp the reality of the risk created by his irresponsible conduct.

Lindsey presents no authority for the proposition that the court cannot impose a harsh sentence on a person who has clearly failed to learn anything from his arrest and prosecution. Lindsey instead argues only that the court cannot punish him for exercising his right to plead not guilty.

Lindsey relies on *Thurston v. State*, 791 S.W.2d 893 (Mo.App.1990) as authority for his appeal. In that case, the record showed that the trial court had engaged in a consistent practice over twelve years of imposing the maximum sentence on all prior offenders who elected to plead not guilty. The appellate court described the trial court's routine as "an unvarying predetermination of issues which require the exercise of judicial discretion on a case-by-case basis." *Thurston*, 791 S.W.2d at 897. The court found the trial court's approach

to be a violation of § 557.036 which dictates that a trial judge has an affirmative duty to evaluate each defendant and devise appropriate disposition. *Id.*

Furthermore, the *only* reasons articulated by the trial judge in *Thurston* for imposing the maximum sentence on each count and ordering the sentences served consecutively were that the defendant had "refused to plea bargain" and "insisted on his right to trial by jury." *Id.* at 896. The reviewing court found that the trial judge's remarks, buttressed by a review of his record, made "inescapable" the conclusion that the judge's practice infringed upon rights guaranteed by the Fifth and Sixth Amendments to the Constitution of the United States made applicable to the states by the Fourteenth Amendment. *Id.*

Unlike the facts in *Thurston*, the record in the present case does not support Lindsey's contention that the sentencing court penalized him for exercising his constitutional rights to trial by jury. The court here made no mention of Lindsey's refusal to plea bargain or of his insistence on a jury trial. Also, there is no evidence of a consistent pattern of handing out maximum sentences to individuals electing to plead not guilty. Nor did the court impose the maximum sentence in this case, electing instead to impose half of the 180–day maximum.[3] Moreover, Lindsey has no evidence to show that the trial judge's reputation for fairness in sentencing is not above reproach. Lindsey is left with nothing to argue except for the court's comments about Lindsey's view of the circumstances.

There is nothing in the trial judge's remarks which supports the interpretation urged upon us by Lindsey. Lindsey clearly had no idea, even at the time of sentencing, how impaired he was while he was driving down Interstate 70, drinking orange juice and vodka, on the night in

---

2. *See United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); Jane E. Maess, Annotation, *Propriety of Sentencing Judge's Consideration of Defendant's Perjury or Lying in Pleas or Testimony in Present Trial*, 34 A.L.R.4th 888 (1984).

3. Counsel for the state admitted in oral argument to being "surprised" by the length of the sentence in this first-time DWI case. Shock is sometimes the very effect which the trial court desires to achieve, especially when dealing with someone who, after a short time in jail, may have a different view of reality.

question. Nor does he, even now, believe that he was impaired at the time, or that his conduct created a risk of harm for any other drivers.

We must assume that the trial court was attempting in good conscience to perform the difficult function of sentencing according to her best judgment. Certainly the court's remarks, *in context,* provide no reason to suspect the court was punishing Lindsey for exercising his right to plead not guilty. Point denied.

## Conclusion

The conviction and the sentence in this case are affirmed. A memorandum discussing the points not covered in this opinion has been furnished to the parties pursuant to Rule 30.25(b).

BRECKENRIDGE, C.J., P.J., LOWENSTEIN, ULRICH, HANNA, SPINDEN, SMART, LAURA DENVIR STITH, and HOWARD, JJ., concur.

ELLIS, J., Concurs in part and dissents in part in separate opinion.

EDWIN H. SMITH and RIEDERER, JJ., join in the opinion concurring in part and dissenting in part.

ELLIS, Judge, concurring in part and dissenting in part.

In my view, the trial judge's comments at the time of sentencing create at the very least an appearance that Mr. Lindsey was being punished for exercising his constitutional rights not to plead guilty and to demand a jury trial. For this reason, I respectfully dissent from that part of the majority opinion holding that "the court's remarks...provide no reason to suspect the court was punishing Lindsey for exercising" those rights, *Maj. Op.* at 582, and would remand the case to the trial court solely for the purposes of resentencing. In all other respects, I concur in the majority opinion.

In *United States* v. *Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138(1968), the United States Supreme Court was faced with a challenge to a provision in the Federal Interstate Kidnapping Act which allowed for the death penalty if the jury so decided. *Jackson* challenged the provision, contending that the fact that the death penalty could only be imposed by the jury stood as a deterrent to his exercise of his constitutional right to a jury trial. The court agreed, stating:

> The inevitable effect of any such provision, is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional.

*Id.* at 581, 88 S.Ct. 1209.

Thus, it is now well settled that "[a] court may not use the sentencing process to punish a defendant, notwithstanding his guilt, for exercising his right to receive a full and fair trial." *State v. Vaughn,* 940 S.W.2d 26, 29 (Mo.App. S.D. 1997)(*quoting United States v. Sales,* 725 F.2d 458, 460 (8th Cir.1984)). A defendant's exercise of his constitutional right to trial by jury to determine his guilt or innocence must have *no* bearing on the sentence. *State v. Martin,* 852 S.W.2d 844, 855 (Mo.App. W.D. 1992) (*quoting Hess v. United States,* 496 F.2d 936, 938 (8th Cir.1974) (emphasis added)). Indeed, due process requires that vindictiveness against a defendant for having exercised his constitutional rights "must play *no part* in the sentence he receives." *Alabama v. Smith,* 490 U.S. 794, 798 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865, 872 (1989) (*quoting North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656, 669 (1969) (emphasis added)).

The trial court's comments in this case—relating to Mr. Lindsey's failure to "to believe or accept the testimony of any of the state's witnesses," that Mr. Lindsey's testimony at trial was "completely at odds with all the [state's] evidence," and that he accepted no responsibility or didn't acknowledge any wrongdoing during the

trial——at the very least are unclear, and at worst give rise to an inference that Mr. Lindsey's sentence was enhanced for exercising his constitutional rights. "The '[a]ugmentation of sentence' based on a defendant's decision to 'stand on [his] right to put the government to its proof rather than plead guilty' is clearly improper." *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir.1985)(*quoting United States v. Araujo*, 539 F.2d 287, 291–92 (2d Cir. 1976)). To avoid any chilling effect on the exercise of basic constitutional rights, it is essential for the trial court to avoid even the appearance that a defendant's sentence is being enhanced for exercising his right to stand trial. *Thurston v. State*, 791 S.W.2d 893, 896 (Mo.App. E.D.1990) (*quoting United States v. Medina–Cervantes*, 690 F.2d 715, 717 (9th Cir.1982)).

The facts in the instant appeal are strikingly similar to those in *Hess v. United States*, 496 F.2d 936 (8th Cir.1974). In that case, at the time of sentencing, the trial judge stated:

> There has been some suggestion that leniency ought to be shown...It has been my experience in life that when we seek leniency, when we seek to be absolved of our sins, we must first admit our sins and in this case there has been no admissions of sins. There has been, on the contrary, a determination to pursue every remedy....

*Id.* at 938. The defendants argued on appeal that the trial court's comments indicated that the trial judge enhanced their sentences because they had opted to stand trial rather than admit their guilt. The Eighth Circuit concluded that "the tenor of the court's observation is not entirely clear." As a result, the court declared:

> [F]airness dictates that these proceedings be remanded to the district court for the purpose of permitting [the trial judge] to determine whether the sentences were enhanced [based on defendants' failure to plead guilty]. Should the judge find upon an objective evaluation of all pertinent circumstances that the sentences were influenced by that improper consideration, then he shall set

them aside and resentence. On the other hand, should the judge conclude that he did not penalize appellants for their insistence on trial, he shall file an appropriate order so finding.

*Id.* at 941.

Similarly, in *United States v. Medina–Cervantes*, 690 F.2d 715 (9th Cir.1982), the trial court made the following statements at the time of sentencing:

> It's obvious to me that this man wanted a trial, with all his constitutional rights, and he insisted upon them and he had them. To the cost to the government for the jury, with 40 jurors, $30 a piece, is $1200, figure that transportation was $1500, cost defenders, cost of Schoonover, who nobody would stipulate, the fingerprints on the card, no pictures having been made.
>
> All I can see is he was just thumbing his nose at our judicial system, stands there he could [sic] care less. Just a way of life, I guess. Be that as it may.

*Id.* at 716. Thereafter, in imposing a fine upon the appellant, the trial court stated "its purpose was to reimburse the government for the cost of the jury trial...." *Id.* On appeal, the court found that the trial judge's comments gave rise to an inference that the defendant "was punished more severely because of his assertion of the right to trial by jury...Accordingly, *in order to avoid the 'chilling effect' upon the exercise of the right to trial presented by even the appearance of such a practice, we conclude that the sentence imposed on Medina–Cervantes must be vacated.*" *Id.* at 716–17 (emphasis added). The case was then remanded for resentencing.

The facts in *Hess* and *Medina–Cervantes* are almost identical to those in the instant case. Although I do not doubt the good faith of the trial court, the comments imply that Mr. Lindsey's sentence may have been enhanced for challenging the state's evidence and for testifying as to his own recollection of the incident. Any enhancement of his sentence based on those factors serves to punish Mr. Lindsey for

584

exercising his right to a full and fair trial. "[S]ince the tenor of the court's observation is not entirely clear, and because the remedy is relatively painless, [I] believe the trial court should be afforded an opportunity to fully examine [its] sentencing procedure and to consider the factors which motivated the sentence imposed." *Hess*, 496 F.2d at 938. For the public to have confidence that the constitutional right to a jury trial is sacrosanct, even the appearance that punishment is being enhanced because of exercise of that right must be remedied. Otherwise, the protection of the Fifth Amendment, declaring our right to plead not guilty, and the Sixth Amendment, declaring the right to a jury trial, are "of no value, and... might as well be stricken from the Constitution." *Weeks* v. *United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652(1914).

For these reasons, I would remand the case to the trial court solely for the purposes of resentencing. In all other respects, I concur in the majority opinion.

Judge EDWIN H. SMITH and Judge RIEDERER, concur.