**Richard R. TAYLOR, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 74275.**

Missouri Court of Appeals,
Western District.

Aug. 28, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 2012.

Application for Transfer Denied
Dec. 18, 2012.

Jonathan Sternberg, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Dora A. Fichter, Jefferson City, MO, for respondent.

Before Division Three:  VICTOR C. HOWARD, Presiding Judge, KAREN KING MITCHELL, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Richard Taylor ("Taylor") appeals from the motion court's denial of his Rule 24.035 motion ("Motion") without an evidentiary hearing.  Taylor's Motion alleged that the sentencing court punished him with the maximum sentence only because he had exercised his constitutional right to appeal

the imposition of special conditions on his probation. The sole question presented by this appeal is whether Taylor was entitled to an evidentiary hearing prior to the denial of his Motion. We conclude that Taylor was not entitled to an evidentiary hearing. We affirm.

## Factual and Procedural History

In March 2006, Taylor pled guilty to the class D felony of endangering the welfare of a child in the first degree stemming from allegations that in 2003, Taylor, then twenty-two years old and a youth minister, kissed a fifteen year old female member of his youth group. At the plea hearing, in exchange for Taylor's plea of guilty, the State recommended that the imposition of sentence be stayed and that Taylor be placed on probation for a period of five years with additional terms and conditions.[1] The trial court postponed deciding whether to accept the plea and recommended disposition until a sentencing advisory report could be prepared.

In July 2006, after receipt of the sentencing advisory report, the trial court accepted the plea and recommended disposition. As a result, imposition of sentence was suspended and Taylor was placed on probation for a period of five years subject to customary terms and conditions, and to special conditions which included nine days of shock detention in the county jail.

On September 7, 2006, the trial court added two special conditions to Taylor's probation: (1) that Taylor undergo an evaluation by a physician to determine his need for treatment and successfully complete all recommended treatment, and (2) that Taylor register as a sex offender. Taylor filed objections to these special conditions. On December 4, 2006, the trial court amended its order and removed the first condition (evaluation and treatment) but retained the second condition (registration).

On March 13, 2007, Taylor filed a petition for declaratory relief objecting to the special condition requiring his registration as a sex offender. Taylor challenged the constitutional application of Missouri's Sex Offender Registration Act ("SORA") to him because he pled guilty prior to a June 2006 amendment which broadened SORA's application to include the charge to which Taylor had pled. The trial court granted summary judgment in Taylor's favor and ordered the removal of Taylor's information from all sex offender registries. The State appealed. This Court affirmed the trial court's judgment in *Doe v. Phillips*, 261 S.W.3d 611 (Mo.App. W.D.2008).

On March 15, 2007, while Taylor's declaratory judgment action was pending, the trial court[2] issued an order removing the special condition requiring Taylor to register as a sex offender.[3] However, on May 7, 2007, the trial court added the special condition to Taylor's probation that Taylor be *supervised* (as distinguished from registered) as a sex offender. On December 13, 2007, the trial court also

---

1. At the plea hearing the trial court mistakenly characterized the charge to which Taylor pled guilty as a class C felony, when in fact it was a class D felony. The trial court thus mistakenly articulated the range of punishment for a class C of one to seven years instead of the range of punishment for a class D felony of one to four years.

2. Taylor's 2006 guilty plea proceedings and subsequent probation hearings were presided over by the Honorable Peggy Richardson and then the Honorable Greg Kays until approximately February 2007. Thereafter, the Honorable G. Stanley Moore presided over Taylor's proceedings through January 2011.

3. By this time, Taylor had already registered. Thus, his declaratory judgment action proceeded.

restored the special condition that Taylor attend and successfully complete sex offender treatment.

On February 14, 2008, Taylor filed a writ of prohibition in this Court challenging the trial court's authority to impose the special conditions that Taylor be supervised as a sex offender and that Taylor complete sex offender treatment. We denied the writ. Taylor sought relief from the Supreme Court which issued a preliminary writ, then quashed same, finding that the trial court acted within its discretion when it modified Taylor's probation conditions to include supervision as a sex offender, evaluation by a physician, and successful completion of sex offender treatment. The Supreme Court also held that the imposition of these additional conditions did not violate state constitutional provisions prohibiting ex post facto laws. *State ex rel. Doe v. Moore*, 265 S.W.3d 278 (Mo. banc 2008).

On November 3, 2008, Taylor admitted during a probation review hearing that he had committed a probation violation.[4] The trial court docket reflects "Probation continued on the same terms. Defendant cautioned on following requirements of probation and that no further delinquency will be tolerated."

Following additional concerns with the performance of his probation conditions, Taylor's supervising probation officer, Barbara Hayes ("Hayes"), filed a probation violation report and recommended that Taylor's probation be revoked.

On December 17, 2010, the trial court held a probation revocation hearing. Hayes testified that Taylor failed to obtain electronic monitoring equipment (a requirement imposed by Hayes in June 2010 after Taylor failed a polygraph test). Taylor was to have appeared in her office on June 3, 2010, to be fitted for the equipment. Though Hayes was not available, another officer was, and had Taylor sign an electronic monitoring agreement. Taylor was told to wait in the lobby to pick up the equipment, but he did not do so. Hayes did not realize until August 10, 2010, that although Taylor had signed the monitoring agreement, he had never picked up, and thus was not wearing, the monitoring equipment.[5] Hayes contacted Taylor. Taylor blamed Hayes, telling her it was her fault for not doing her job. Though Hayes believed (with one exception) that Taylor had abided by the monitoring terms set forth in the agreement Taylor signed, she testified she couldn't know for sure, as Taylor had not been wearing the equipment, and that she felt his explanation for not picking up the equipment was "deceitful." Hayes described one occasion where Taylor had not abided by his monitoring and curfew agreement. Hayes testified that on Sundays, Taylor was only permitted to go to church and to treatment. Taylor had asked for the ability to bail hay on Sunday, June 6, 2010, but was denied. Taylor went anyway. The trial court imposed GPS and SCRAM monitoring as probation requirements in August 2010 after Hayes learned that Taylor had not been wearing the electronic monitoring equipment.

Hayes testified that after the completion of Taylor's appeals addressing the special condition of sex offender treatment, Taylor

---

4. The nature of this probation violation is not clear from the record.

5. Hayes testified that she is only e-mailed if there is a violation of the electronic monitoring equipment curfews and guidelines. Because Taylor had signed the monitoring agreement, but had not picked up the equipment, no e-mails were generated indicating violations as the equipment was never activated.

was directed in September 2008 to enter treatment within 30 days. He did not do so. Instead, Taylor waited nearly 45 days to sign up for treatment. He was written up for a violation of his probation as a result.

When Taylor did start treatment, he was assigned to a sex offender treatment program at Keypoint. He attended from approximately October 2008 until August 1, 2010, when he was terminated from the program. According to Hayes, Taylor was terminated for "manipulating treatment, continued use of cognitive distortions, and . . . being able to apply information to other people but not . . . to himself." After his termination from the program, Taylor failed to resume treatment anywhere else. Hayes provided Taylor with a list of other possible providers, but Taylor took exception to each one.

Hayes testified that Taylor failed a polygraph test in May 2010 on the subject of alcohol use.[6] Abstaining from the use of alcohol was a condition of Taylor's probation. When confronted with the polygraph result, Taylor admitted to having a drink on his 30th birthday. According to Hayes, Taylor "rationalized" his use of alcohol saying that "he felt he was able to have a drink on his birthday if he so chooses."

Because of the result on the first polygraph, a second test had to be scheduled. Hayes testified that when she spoke with Taylor about scheduling the second polygraph (at a point before she realized he was not wearing his electronic monitoring equipment) Taylor "stated that he could turn his [electronic monitoring] equipment in," intimating that he was wearing same when he was not. Hayes considered Taylor's conduct to be "lying by omission." Hayes testified that the second polygraph test in July 2010 indicated "significant reactions" indicative of deception on every question asked, including on the subject of further consumption of alcohol, and on the subject of Taylor's arousal when in contact with minors. Hayes testified that when she confronted Taylor about the deceptive indications from his second polygraph, he expressed surprise, "because he practiced the questions ahead of time." When asked if she believed this behavior to be "manipulative," Hayes testified that it was her opinion that "trying to practice questions for a polygraph is an attempt to try to beat the polygraph. . . . So, it was still deceptive."

Hayes testified that one of the therapists with whom Taylor had been working with at Keypoint utilized a screening tool to attempt to define arousal patterns. Hayes noted in a status report that the therapist expressed the opinion that Taylor showed arousal toward adolescent and adult females—a similar topic as that about which Taylor registered a deceptive response on his second polygraph test.

When asked by Taylor's counsel why she was recommending revocation of probation when the end of Taylor's probationary term was looming,[7] Hayes stated:

> Mr. Taylor was directed by the court, in November, 2008, if he had any more indiscretions that there would be zero tolerance for his behavior. That combined with the potential risk that he is still having arousal feelings with regard to minors, in conjunction with his continued manipulations of the Court's order, I don't have many alternatives besides recommend revocation.

---

6. It was because of this failed polygraph test that Hayes imposed electronic monitoring as a requirement.

7. By the time of the probation revocation hearing, Taylor was approximately four and a half years into his five year probationary term.

Hayes also testified that Taylor was egotistical and had a negative attitude. In response, Taylor's counsel asked: "The attitude, which I grant you, has Mr. Taylor otherwise complied with his probation?" In response, Hayes answered "With the exception of the violations submitted to the Court."

Taylor testified. He admitted that he had demonstrated a very bad attitude "last June and July," and faulted "a frustration level with the mounting of the polygraphs and all of this stuff. It seemed like everyone was coming down on me." He admitted failing every question on the July 2010 polygraph test, though he attributed the failure to being nervous. Later in his testimony, Taylor stated that he felt his "biggest problem the last four years has just been a bad attitude.... I had a bad attitude and I am taking that seriously, because I do not want a bad attitude to ruin all I have going for me in my life." On cross examination, Taylor admitted that his attitude "improved" after he found out that Hayes was recommending revocation of his probation.

Brenda Ulmer ("Ulmer"), a therapist with the Keypoint program, testified that Taylor was terminated from the program for failing the second polygraph in July 2010, and also for "manipulating" his behaviors in treatment and actions. When asked if she would be willing to take Taylor back into the Keypoint program if so requested by the court, Ulmer said, "At this point, I am not sure, I've heard all of the manipulations here about the whole house arrest thing."

At the conclusion of the evidentiary hearing, the trial court reminded Taylor of a discussion at a prior hearing in August 2010:

The Court: Do you recall when we met last?

Taylor: Yes, sir, very well.

The Court: And, I asked if you wanted to be on probation?

Taylor: Yes, sir.

The Court: And I told you that you had to do absolutely what you were told, no exceptions, do you recall that?

Taylor: In August, yes, sir. Your exact words to me, if you want to be on probation you need to prove it to me, yes, sir.

The Court: That was in August of 2010?

Taylor: Right, before you put the bracelets on me.

The Court: I'm looking back at a report October 19th, of 2008. Reason I am looking at that it says that there was a violation for failing to enter the sex offender treatment as ordered by the Court. And it says Taylor continues to refuse to comply with the Court's order, *continues to attempt to manipulate the court system.* Good example of this is given 30 days to enter treatment, he requested 45. *Since day one you have done exactly what you have wanted to do and manipulated the probation system and manipulated this Court.... [Y]ou're not going to be a concern to me from this point on because I'm revoking your probation.*

(Emphasis added.) Upon revoking Taylor's probation, the trial court sentenced Taylor to seven years in the Department of Corrections.

On January 21, 2011, after receiving a letter from the State notifying the trial court that at the time of Taylor's offense, the charge of endangering the welfare of a child in the first degree was a class D felony, not a class C felony, the sentencing court amended the sentence to four years, the maximum allowed by law for a class D

felony.[8]

On June 8, 2011, Taylor filed his Rule 24.035 Motion challenging his sentence. The Motion alleged:

> The Court abused its discretion in sentencing Mr. Taylor to four years in prison, the maximum possible sentence. Under all the circumstances, a sentence of four years for an offense committed eight years earlier for which Mr. Taylor had pleaded guilty and who was before the Court for sentencing only because he had committed de minimis, technical violations of his probation conditions with only six months of probation left was against the logic of the circumstances and was so arbitrary and unreasonable as to the shock the sense of justice and indicate a lack of careful consideration. *The Court punished Mr. Taylor with this harshest possible sentence only because he had exercised his constitutional right to challenge a condition of probation in the Supreme Court of Missouri, which the Court impermissibly characterized as "manipulation" of the probation system.*

(Emphasis added.) This allegation was followed by several pages arguing Taylor's claim. Relevant to our discussion, Taylor's Motion quotes a portion of the colloquy set forth above, attributing the following statement to the trial court:

> Since day one you have done exactly what you have wanted to do and manipulated the probation system and manipulated this Court. [Y]ou're not going to be a concern to me from this point on because I'm revoking your probation. I'm ordering you serve 7 years in the Department of Corrections.

On June 17, 2011, the Honorable G. Stanley Moore, the trial judge who had been handling Taylor's proceedings since approximately February 2007, recused himself. Taylor's Motion was reassigned to the Honorable Donald Barnes (the "Motion Court").

On July 21, 2011, the Motion Court denied Taylor's Motion without an evidentiary hearing. On August 4, 2011, Taylor filed a motion to vacate or amend the judgment and for a new trial ("Motion to Vacate"). The Motion Court denied Taylor's Motion to Vacate.

Taylor appeals.

### Standard of Review

■ Our review of a motion court's ruling on a Rule 24.035 motion is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k); *Muhammad v. State*, 320 S.W.3d 727, 728 (Mo.App. E.D.2010). "The motion court's findings and conclusions are clearly erroneous only if, after a review of the entire record, [we are] left with the definite and firm impression that a mistake has been made." *Muhammad*, 320 S.W.3d at 728.

### Analysis

For his sole point on appeal, Taylor claims that the Motion Court clearly erred in denying his Motion without an evidentiary hearing. We disagree. Before addressing whether Taylor was entitled to an evidentiary hearing, we need first address, however, the Motion Court's legal determination that Taylor's Motion failed to state a cognizable claim.

---

8.  See footnote 1. Section 568.045 was amended effective June 27, 2003, changing endangering the welfare of a child in the first degree from a class D felony to a class C felony. This amendment took effect after Taylor committed the offense to which he pled guilty.

### Cognizability of Taylor's Claim

■ "Rule 24.035 allows for challenges to the validity of judgments or sentences only, and then only on specified grounds." *Griffin v. State*, 937 S.W.2d 400, 401 (Mo.App. E.D.1997). Rule 24.305 provides:

A person convicted of a felony on a plea of guilty and delivered to the custody of the department of corrections who claims that the ... sentence imposed violated the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 24.035.

"Challenges to the legality of a sentence imposed on a defendant following a guilty plea to a felony charge may be considered by the trial court in response to a Rule 24.035 motion." *State v. Goodues*, 277 S.W.3d 324, 326–27 (Mo.App. E.D.2009).

The Motion Court concluded that Taylor's Rule 24.035 Motion did not present a cognizable claim because "revocation of probation determinations are not subject to challenge in a Rule 24.035 Motion except in circumstances not present in this case." The Motion Court also concluded that Taylor's Motion failed to allege a cognizable claim because "[Taylor] makes no claims of Constitutional violations, lack of jurisdiction, violations of any statutes, a sentence not authorized by law or ineffective assistance of counsel. He claims only

that Judge Moore abused his discretion in sentencing [Taylor] to a sentence authorized by law."

■ The State agrees that the Motion Court's rejection of Taylor's Motion on either of these bases was legal error. Taylor's Motion did not contest the revocation of his probation. The Motion contested the legality of the sentence imposed upon revocation of his probation, and argued that the harshest sentence possible was imposed "only because [Taylor] exercised his constitutional right to challenge a condition of probation in the Supreme Court of Missouri." It is unconstitutional to use enhanced sentencing to punish or penalize a defendant who exercises his constitutional rights. *See United States v. Jackson*, 390 U.S. 570, 581, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (holding that practice which discourages exercise of Fifth or Sixth Amendment rights by penalizing through enhanced sentencing the exercise of those rights is unconstitutional) (cited with approval in *Thurston v. State*, 791 S.W.2d 893, 896 (Mo.App. E.D.1990)).

In fact, our courts have addressed similar claims of punitive or retaliatory sentencing in post-conviction proceedings. *See Vickers v. State*, 17 S.W.3d 632 (Mo. App. S.D.2000) (defendant asserted in a Rule 24.035 motion that the maximum sentence was illegally imposed in retaliation for his initial assertion of a right to jury trial); *Thurston*, 791 S.W.2d at 893 (remand for resentencing ordered in Rule 29.15 proceeding where trial court found to have consistent practice of imposing maximum sentence for prior offenders who exercised right to jury trial).[9]

---

9. There is some authority for the proposition that a claim of retaliatory sentencing may not be cognizable in a Rule 29.15 post-conviction proceeding if the claim could have been raised in a direct appeal. *Glaviano v. State*, 298 S.W.3d 112 (Mo.App. W.D.2009). However, the holding in *Glaviano* has no application in Rule 24.035 proceedings "[b]ecause no direct appeal lies from a guilty plea, [and] the defendant's claim that the sentencing court

We conclude that Taylor's Rule 24.035 claim of retaliatory sentencing was cognizable, and that the Motion Court's conclusions to the contrary were legally erroneous. The State concedes that Taylor's Motion asserted a cognizable claim under Rule 24.035. The State argues, however, that the Motion Court's denial of Taylor's Motion should nonetheless be upheld because the Motion Court reached the right result for an alternatively (and expressly) stated reason—because the claim asserted in the Motion was refuted by the record.

We agree that if this alternatively stated basis for denying Taylor's Motion is not clearly erroneous, then the Motion Court's Judgment must be upheld. In this regard, Taylor's appeal focuses exclusively on whether the Motion Court's denial of his Motion was clearly erroneous because the trial court failed to afford Taylor an evidentiary hearing.

### Taylor's Right to an Evidentiary Hearing

█ Though Taylor's Motion asserted a cognizable claim under Rule 24.035, Taylor is not guaranteed an evidentiary hearing on his claim. "A movant is entitled to an evidentiary hearing only if (1) the movant [pleads] facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant." *Jackson v. State*, 366 S.W.3d 656, 659 (Mo.App. E.D.2012). We conclude that Taylor's Motion did not satisfy this test.

#### (i) Allegation of Facts Warranting Relief

First, we must determine whether Taylor pled facts, not conclusions, warranting

relief.[10] Taylor's Motion asserts that the trial court sentenced Taylor to the harshest possible sentence *only* because he exercised his constitutional right to challenge the conditions of his probation in the Supreme Court. This is obviously a conclusion which, standing alone, would not satisfy the obligation to allege specific facts warranting relief.

Taylor's Motion described the court challenges Taylor undertook to object to certain conditions placed on his probation. Taylor's Motion recited the portion of the statement made by the trial court during the probation revocation hearing regarding Taylor's manipulation of the probation system and the court. Taylor's Motion observed that he received the maximum permissible sentence for his offense notwithstanding that he was four and a half years into a five year probationary term. Taylor's Motion then concludes that the trial court's comment about his manipulative behavior was in necessary reference to his judicial challenges to certain of the conditions imposed on his probation.

█ It is true that Taylor's challenges to the conditions placed on his probation, the trial court's statement about Taylor's "manipulation" of the system, and the length of the sentence imposed on Taylor, are allegations of a factual nature. They are not, however, contested factual allegations. They are instead uncontested facts plainly established by the record. No purpose would be served to conduct an evidentiary hearing to establish facts that are not in contest. The "contested" element of Taylor's Motion is his argued connection between the aforesaid uncontested facts— the supposition that the trial court's refer-

punished him for [asserting rights] ha[s] to be brought in a post-conviction proceeding." *Id.* at 115.

**10.** The State's brief did not address whether this prong was established by Taylor's Motion, but the State urged in oral argument that it had not conceded the point.

ence to "manipulation of the system" was in necessary reference to Taylor's judicial challenges. We have already pointed out that this attribution of intent is a conclusion, not a factual allegation. A trial court's non-specific statement of admonition or criticism regarding a defendant's behavior or conduct is not self-proving of retaliatory intent.

Thus, to determine whether the first prong of the "evidentiary hearing" test is satisfied, we must explore Taylor's Motion to locate contested factual allegations which, if proven, would *warrant relief*. In application, this principle requires the assertion of facts sufficient to satisfy the standard applicable to assess the merits of the underlying allegation. *See, e.g., Morrow v. State*, 21 S.W.3d 819, 823–24 (Mo. banc 2000) (holding that an evidentiary hearing was not required on a post-conviction motion *because* the movant did not allege facts sufficient to establish each of the necessary elements of a claim of ineffective assistance of counsel based on an allegation of failure to investigate and call witnesses).

To apply that principle here, we must first discern the standard applicable to assess the merit of Taylor's claim of retaliation. In *State v. Wright*, 998 S.W.2d 78 (Mo.App. W.D.1999), we held that "no constitutional violation occur[s] if there were other reasons which also caused the court to impose the same sentence, so that the comment on the fact defendant went to trial was not determinative." *Id.* at 83 (dismissing and explaining language in *State v. Brewster*, 836 S.W.2d 9 (Mo.App.

E.D.1992) which could be mistakenly read to suggest that retaliation requires proof that a trial court *solely* considered the defendant's exercise of a constitutional right in sentencing). By defining the standard as "determinative factor," and not as "solely," we made clear that the record cannot indicate that a trial court "enhance[d] the Defendant's sentence in part based on Defendant's decision to [exercise a constitutional right]." *Id.* at 84. In other words, if a defendant's exercise of a constitutional right was an actual factor considered by the sentencing court in imposing sentencing, then the exercise of the right was a "determinative factor" in sentencing, and retaliation has been demonstrated, even if other factors could have been relied on by the trial court to support the same sentence.

As with most things, however, the devil in applying this standard is in the details. It is clear from the cases that have applied the "determinative factor" test that something beyond the bare possibility that retaliation *could* have been a factor in sentencing must be shown. In *Wright*, the trial court stated on the record that its decision to order consecutive versus concurrent sentences "was influenced by Defendant's decision to go to trial," which required victims to testify. *Id.* We concluded that the "court's comments at the time of sentencing indicate that he made Defendant's sentence longer than it otherwise would have been in part based on the latter's decision to go to trial." *Id.* In *Thurston*, the sentencing judge testified in movant's Rule 29.15 hearing[11] that he im-

11. We note an important distinction between *Thurston* and the case before us. In *Thurston*, the movant's Rule 29.15 motion alleged that the movant's mother and brother spoke with the sentencing judge after sentencing, and that the judge told them that the only reason he imposed the severe sentence that he did was because the movant hired a "big-shot St. Louis lawyer," and refused an offered plea bargain. 791 S.W.2d at 895–96. This was an off-the-record discussion, and thus was not established as even having occurred by the record. *Id.* The allegation about whether the statement was made was thus a contested fact

posed the maximum sentence on the defendant because the defendant refused to plea bargain, and that the defendant should have known of the sentencing court's practice to impose consecutive versus concurrent sentences on defendants who are prior and persistent offenders and who are convicted after insisting on a trial. 791 S.W.2d at 896. Not surprisingly, given this testimony, the Eastern District found that the defendant's sentence had been unconstitutionally enhanced.[12] *Id.* In *Vickers*, a motion court found in rejecting Vickers's Rule 24.035 motion that "Movant received a twenty-year sentence because he rejected the State's initial plea offers and chose to proceed to trial."[13] 17 S.W.3d at 634. This holding was held on appeal to directly connect the trial court's sentencing with an improper retaliatory intent, requiring resentencing. *Id.* at 635–36.

*Wright*, *Thurston*, and *Vickers* each involved statements by the sentencing judge or a finding about sentencing that *directly connected* an enhanced sentence with actual consideration of an improper desire to punish exercise of a constitutional right. In each of those cases, there was no doubt that retaliatory intent was a "determinative factor," that is to say, an actual factor, in sentencing.

In contrast, in *State v. Lindsey*, 996 S.W.2d 577 (Mo.App. W.D.1999), a trial court imposed a sentence nine times longer than that recommended by the State. *Id.* at 579. At sentencing, the trial court admonished the defendant for "accepting absolutely no responsibility or even acknowledging any wrongdoing . . . . if somebody doesn't acknowledge they even did anything wrong, it would be hard to take the position that it won't happen again." *Id.* The defendant argued on direct appeal from his conviction that "the record establishe[d] that the trial court imposed this harsher sentence upon him in retaliation for exercising his right to trial by jury." *Id.* We disagreed. We noted that section 557.036.1 [14] provides that a sentencing court is to determine a sentence in view of " 'all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant.' " *Id.* (quoting section 557.036.1). We observed that "[w]e presume that the trial court's experience and expertise enable the judge to consider appropriate sentencing factors and to disregard improper matters." *Id.* at 579–80 (citations omitted). We concluded that the trial court's "statements reflect consideration of both Lindsey's crime and Lindsey

that if proven, would have established a direct connection between the comment and retaliatory sentencing. *Thurston* stands in stark contrast to the case before us, where there is no contest that the statement at issue was made by the trial court.

**12.** *Thurston* predated *Wright*, and thus used the "solely" language discounted by our discussion in *Wright*. Notwithstanding, the holding in *Thurston* is instructive, as it involved a sentencing court's statement that left no doubt that retaliation was a factor in sentencing.

**13.** After insisting on going to trial, the defendant then withdrew his plea during trial and pled guilty, explaining the fact that his post-

conviction motion was filed under Rule 24.035. *Vickers*, 17 S.W.3d at 633 n. 1.

**14.** Section 557.036.1 provides that "Upon a finding of guilt upon verdict or plea, the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." Section 557.036 imposes an affirmative duty on the sentencing court to undertake a case by case, defendant by defendant, evaluation and to fashion an appropriate disposition such that the punishment fits both the crime and the defendant. *Thurston*, 791 S.W.2d at 897; *Lindsey*, 996 S.W.2d at 579.

himself," as permitted by section 557.036.1. *Id.* at 580. We acknowledged that the trial court's statement *could* (theoretically) be construed as Lindsey argued, as it was seemingly "superfluous because defendants who plead not guilty generally have their own version of the facts." *Id.* However, we rejected the argued theoretical construction *because* "[a] careful review of the evidence [ ] sheds light on the court's comment." *Id.* In rejecting Lindsey's argued construction of the trial court's statement, we observed not only that the record afforded a proper context for the statement, but also that "[t]he court here made no mention of Lindsey's refusal to plea bargain or of his insistence on a jury trial." *Id.* at 581. This conclusion was reached in *Lindsey* without an evidentiary hearing, as the matter was raised on direct appeal.

A similar scenario presented itself in *State v. Palmer*, 193 S.W.3d 854 (Mo.App. S.D.2006). On direct appeal from a conviction for felony robbery, Palmer claimed retaliatory sentencing based on the trial court's statement during sentencing that "It's pretty disturbing to see you still not taking responsibility for that second robbery. I don't think there's any question that we don't have that standard but beyond a shadow of a doubt comes to mind to me on that one . . . . that you've had some problems and hit rock bottom doesn't come close to taking responsibility for this crime." *Id.* at 856. The Southern District concluded that Palmer did not demonstrate that "the trial court factored in his failure to incriminate himself in assessing punishment." *Id.* It reached this conclusion after exploring the balance of the

record and determining that it was obvious from that record and from other comments made by the trial court that it considered other appropriate factors "aside from [Palmer's] assertion of his . . . constitutional right[s], so that a comment on [Palmer's] assertion of rights is not the determinative factor in imposing sentence." *Id.* at 857 (citing *Wright*, 998 S.W.2d at 83).[15] Once again, we observe this conclusion was reached based on a review of the record on direct appeal, and without the benefit of an evidentiary hearing.

A result identical to that in *Palmer* was reached under very similar facts in a direct appeal (and thus without an evidentiary hearing) in *State v. Collins*, 290 S.W.3d 736, 746–47 (Mo.App. E.D.2009).

*Lindsey*, *Palmer*, and *Collins* each involved a trial court's generalized observation about the absence of remorse. In *Lindsey*, *Palmer*, and *Collins*, there is no doubt that the generalized statements were not facially inconsistent with the theoretical possibility that they were intended as a comment on the defendant's exercise of the right to proceed to trial. Notably missing in *Lindsey*, *Palmer*, and *Collins* was that which was present in *Wright*, *Thurston*, and *Vickers*—words stated by or attributed to the trial court that directly connected the imposition of enhanced sentencing with a comment about the exercise of a constitutional right. In *Lindsey*, *Palmer*, and *Collins*, our courts found that although the generalized statement regarding the lack of remorse *could* be construed as a comment on the exercise of constitutional rights, the record belied the

---

15. We observe that the court in *Palmer* states the standard as whether the assertion of rights is *the* determinative factor, and attributes this statement of the standard to *Wright*. *Wright* actually held that the assertion of rights must be *a* determinative factor—such that actual consideration in imposing sentence of the exercise of constitutional rights renders that consideration a "determinative factor," even if other factors could have supported the same sentence. *Palmer* should not be read, therefore, to modify the standard stated in *Wright*.

conclusion that the exercise of a constitutional right had *actually* been considered in sentencing because the record established that the trial court considered other proper factors supportive of the sentence. In other words, where the record establishes that other appropriate factors aside from the assertion of a constitutional right were considered in imposing sentence, then a generalized comment on the assertion of a constitutional right is not a determinative factor in imposing sentence.

Having established the standard to be applied to Taylor's Motion, we return to our exploration of the facts alleged in Taylor's Motion.

■■■ It is evident that the trial court's statement in this case falls in the *Lindsey, Palmer, Collins* camp, and not in the *Wright, Thurston, Vickers* camp. The trial court made no statement during the probation revocation hearing about Taylor's prior exercise of his right to judicially challenge conditions on his probation. Thus, the trial court did not directly connect his comment about Taylor's manipulation of the system with those judicial challenges. Taylor's Motion must, therefore, have alleged facts other than the trial court's statement to establish the unspoken connection.

■■■ In his Motion, Taylor alleges that had a presentence investigation report been prepared,[16] it would have demonstrated that Taylor's recommended sentence would have been within a range of a new five-year probationary term and two years imprisonment. Taylor does not cite to any other "facts" in his Motion which he claims would establish a connection between the trial court's generalized statement about manipulation of the system and Taylor's judicial challenges to his probation conditions.[17]

We cannot conclude that Taylor's factual assertion about what his recommended sentence would have been is sufficient to establish that the trial court actually considered Taylor's judicial challenges in imposing sentence. In other words, we cannot conclude that Taylor's assertion about what a presentence investigation report would have recommended would, if proven, warrant relief. In fact, Taylor's factual assertion that he was sentenced beyond that which was or would have been recommended is indistinguishable from the similarly unpersuasive assertion in *Lindsey* that the trial court imposed a sentence nine times longer than that recommended by the State. 996 S.W.2d at 579.

■■■ We are not persuaded, therefore, that Taylor's Motion alleged sufficient facts to demonstrate that the trial court actually considered his judicial challenges in imposing the maximum sentence. In short, Taylor has not alleged facts that would, if proven, establish that retaliation was a "determinative factor" in the trial court's imposition of sentence. *See Morrow,* 21 S.W.3d at 823–24 (holding that

---

16. Taylor requested, but was denied, a presentence investigation report. Taylor does not claim error in this regard, acknowledging that ordering one is always a matter of discretion. *State v.Sanchez,* 217 S.W.3d 923, 926–27 (Mo.App. S.D.2007).

17. In his post judgment motion and/or in his brief, Taylor's counsel claimed to "vividly recall" that at a hearing months prior to the probation revocation hearing, the trial court was visibly angry at Taylor's judicial challenges. Taylor also generically claimed that had an evidentiary hearing been afforded, then Taylor, Taylor's counsel, and the trial judge could have been deposed. These assertions were not made in Taylor's Motion and even assuming their adequacy as factual allegations warranting relief (a suspect proposition), are not to be considered in assessing whether the allegations in the Motion required an evidentiary hearing.

where movant alleged the names of uncalled witnesses, and their anticipated testimony which would have been relevant mitigation evidence in the penalty phase, but did not allege that trial counsel knew of the witnesses, or that the witnesses were available to testify at trial, the movant was not entitled to an evidentiary hearing on his post-conviction relief motion because he did not allege facts sufficient to satisfy the standard applicable to his claim).

Even were we to conclude that Taylor's Motion overcame the hurdle of establishing the first prong of the evidentiary hearing analysis, we would otherwise conclude that Taylor's Motion did not satisfy the second prong of that analysis.

### (ii) Were the Facts Alleged by Taylor Refuted by the Record

■ The second prong of the evidentiary hearing analysis requires us to determine whether the facts alleged by Taylor in his Motion were refuted by the record. For purposes of this discussion, we assume, *arguendo*, that the Motion alleges facts that, if proven, would establish that the trial court's consideration of Taylor's exercise of his right to judicially challenge conditions of his probation was a determinative (that is, actual) factor in his sentencing. We thus explore whether the record refutes this conclusion, keeping in mind the standard we are obliged to apply to the merits of Taylor's claim, discussed, *supra.*

In denying Taylor's Motion, the Motion Court found:

The Honorable Stan Moore presided over the Revocation of Probation proceedings and sentenced [Taylor] at the conclusion thereof. The transcript of the hearing is 98 pages. The Court heard several witnesses including the supervising probation officer who brought with her records of her contacts with [Taylor] and her directions to him while he was on probation. [Taylor] was represented by counsel. The Court heard arguments of the Prosecutor and of [Taylor's] counsel. *There is nothing in the record which would indicate Judge Moore, who did not handle the case in its inception, considered [Taylor's] actions filed in the Supreme Court in his disposition* .... [Taylor] makes no claim of Constitutional violations, lack of jurisdiction, violations of any statutes, a sentence not authorized by law or ineffective representation by counsel. He claims only that Judge Moore abused his discretion in sentencing [Taylor] to a sentence authorized by law.... *Accordingly, a hearing on the Rule 24.035 PCR Motion is denied* and no relief is granted as the Motion on its face shows conclusively [Taylor] is entitled to none.

(Emphasis added.) In denying Taylor's Motion to Vacate, the Motion Court held:

The citations of applicable law made by counsel for [Taylor] are inapposite on the facts; *the record does not support the claim that the Sentencing Court acted arbitrarily without consideration of meaningful evidence and in violation of section 557.036.1;* and there existed a factual basis for determining [Taylor] was not tenable to supervision on probation frequently violating reasonable probation orders; and the Court did not act outside his lawful authority and discretion in ordering [Taylor] into the custody of the Department of Corrections on a sentence of four years.

(Emphasis added.)

"For the record to 'refute' [Taylor's] claim ... the record would have to 'rebut' the claim or *'prove [the claim] to be false.'* " *Dickerson v. State,* 269 S.W.3d

889, 892 (Mo. banc 2008) (quoting Black's Law Dictionary (8th ed.2004)) (emphasis added). Here, the trial court essentially found two things: (i) nothing in the record indicated that by referencing Taylor's "manipulation," that the trial court was referring to Taylor's exercise of his rights to challenge special conditions on his probation; and (ii) nothing in the record indicated that in the absence of consideration of Taylor's exercise of his right to challenge special conditions on his probation, Taylor would not have received the maximum sentence. Not coincidentally, these findings track the discussion of whether retaliation has been established as a "determinative factor" in sentencing set forth in *Wright*, *Thurston*, and *Vickers* (Motion Court's finding one), as contrasted with *Lindsey*, *Palmer*, and *Collins* (Motion Court's finding two).

■ The Motion Court's first finding—that nothing in the record established that the trial court actually considered Taylor's exercise of his right to judicially challenge probation conditions in imposing sentence—is accurate, and is not clearly erroneous. Although the trial court made a generalized comment about manipulation of the system that could, theoretically, have been in reference to Taylor's judicial challenges, the trial court did not mention those challenges during the sentencing hearing, negating direct proof of Taylor's argued attribution.

■ We also cannot find that the Motion Court clearly erred in its second finding—that the record refutes Taylor's attributed meaning to the trial court's generalized comment about his manipulation. The record possessed clear evidence about Taylor's admittedly "bad attitude" throughout his probationary term—an attitude that did not wane until Taylor's probation officer sought the revocation of his probation. Throughout the testimony of Hayes and Ulmer during the probation revocation hearing, the word "manipulation" was used several times to describe Taylor's performance of probation terms that were not the subject of judicial challenges. The words "manipulation" or "manipulative" appear several times in the record to describe Taylor, but never in the context of discussing his judicial challenges. In fact, Taylor's judicial challenges came up on only one occasion when Hayes explained that Taylor's obligation to follow through with enrollment in a sex offender program was triggered in September 2008 when his appeals regarding that condition were exhausted—a neutral temporal reference at worst.

Here, just as in *Lindsey*, *Palmer*, and *Collins*, the record supported a clear, plausible, and legitimate explanation for the fact that Taylor received the maximum sentence. A trial court has every right to take into consideration the character of a defendant and the defendant's attitude concerning the offense in rendering sentence. *Lindsey*, 996 S.W.2d at 580. The trial court's reference to Taylor's "manipulations" is easily explained in context by a review of the transcript of the probation revocation hearing. As we did in *Lindsey*, we conclude that the theoretical construction of the trial court's statement argued by Taylor is refuted by the record because "[a] careful review of the evidence sheds light on the court's comment." *Id.* Plainly stated, other appropriate factors aside from the assertion of a constitutional right were considered in imposing sentence on Taylor such that the trial court's generalized comment, even if interpreted as a comment on the assertion of Taylor's constitutional rights, was not a determinative factor in imposing sentence. If anything, that result is especially clear here where the trial court's use of the word "manipulation" is directly traceable to testimony

elicited about Taylor during the probation revocation hearing having nothing to do with Taylor's judicial challenges.

Were this case before us following an evidentiary hearing, there is no question that we would affirm, on this record, the Motion Court's rejection of Taylor's Motion on its merits. We must similarly conclude, therefore, that the Motion Court's finding that the record refutes Taylor's claim of retaliation is not clearly erroneous, notwithstanding that Taylor was denied an evidentiary hearing. "A motion court is *only* empowered to deny a Rule 24.035 motion without an evidentiary hearing when 'the motion and the files and records of the case *conclusively* show that the movant is entitled to no relief,'" as provided in Rule 24.035(h). *Fisher v. State*, 192 S.W.3d 551, 554 (Mo.App. S.D. 2006) (quoting *Coates v. State*, 939 S.W.2d 912, 914 (Mo. banc 1997)) (emphasis added). When, as here, a record establishes that the trial court relied on persuasive proper factors and evidence to impose sentence other than the defendant's exercise of a constitutional right, and where there is no evidence directly connecting the imposed sentence with the exercise of that right, the record conclusively shows that the movant is not entitled to relief.

■■■ To further emphasize the propriety of our conclusion that an evidentiary hearing was not required in this case, we remind that in *Lindsey*, *Palmer*, and *Collins*, claims of retaliatory sentencing were rejected on their merits without the benefit of evidentiary hearings. It is true that those cases involved direct appeals, and that Rule 24.035(h) and Rule 29.15(h) addressing evidentiary hearings were not implicated in those cases. That is a distinction without significance, however. Where claims of retaliatory sentencing are raised on direct appeal, we will evaluate, if requested, whether additional evidence is required to explore the factual basis for the claim. *Glaviano v. State*, 298 S.W.3d 112, 116 (Mo.App. W.D.2009). In *Glaviano*, we held that a defendant failed to offer any compelling reason that would permit him to bypass review of his retaliation claim on direct appeal by insisting on the opportunity to conduct an evidentiary hearing in a Rule 29.15 proceeding. *Id.* In that case, no additional testimony or evidence was shown to be required because the offending comments made by the trial judge were made months before sentencing, and the offending comments had been raised in the defendant's motion for new trial and had been discussed at sentencing. *Id.*

We conclude that the trial court's finding that the claim asserted in Taylor's Motion was refuted by the record was not clearly erroneous.

In light of the foregoing discussion, the Motion Court's denial of Taylor's Motion without an evidentiary hearing was not clearly erroneous.

### Conclusion

The judgment of the Motion Court is affirmed.

All concur.